JUNE E. JANISCH AND IRIS D. MARTHINSEN *v.* LAPORTE COUNTY BY ITS COMMISSIONERS ET AL.

[No. 3-573A52. Filed August 13, 1974.]

*Robert S. Gettinger,* of LaPorte, for appellants.

*Frank J. Lanigan, Osborn, Lanigan & Osborn,* of LaPorte, *Leon R. Kaminski, Edward L. Volke, Newby, Lewis, Kaminski & Jones,* of LaPorte, *Winfield L. Houran, Chester, Clifford, Hoeppner & Houran,* of Valparaiso, for appellees.

GARRARD, J.—In 1965, the newly-elected sheriff of LaPorte County hired two ladies, the plaintiffs, to replace the male

deputies previously assigned to the courthouse offices of the sheriff's department in Michigan City and LaPorte.

In 1971, the ladies brought suit for back pay asserting that their duties entitled them to chief deputies' pay. That same year they were discharged and brought a second suit for reinstatement. The cases were consolidated, tried to the court and resulted in judgment for the defendants.

The motion to correct errors contains some 12 specifications under six general headings. Pursuant to Indiana Rules of Procedure, Appellate Rule 8.3, only those specifically treated in plaintiffs' argument portion of their brief are considered. The others are waived.

WAGE ISSUE:

Plaintiffs' claim for back wages is based upon IC 1971, 17-3-71-2, Ind. Ann. Stat. § 49-1002 (1964 Repl.) which provides:

> "In all counties having two (2) or more courts, or having two (2) or more court houses in which branches of the various offices are maintained, the deputies in charge of the various courts, and in charge of the various branches shall rank as first or chief deputies and shall receive compensation as such."

They contend that since they took the same oath deputies take, performed some functions which by law are to be performed by deputies, and were the only persons generally present in their respective courthouse offices, they were *ipso facto* in charge of those offices. Accordingly, they urge the decision on this point is contrary to law.

While plaintiffs would apparently have the outcome depend upon a determination of their status as deputies, under the statutory provision, they also had the burden of establishing that they were "in charge" of the respective offices.

While the phrase "in charge" is susceptible of connoting merely custody, it may also connote control and supervision. We have examined the authorities discussing the term and

are persuaded that the best view has been stated by the Illinois court in *Larson* v. *Commonwealth Edison Co.* (1965), 33 Ill.2d 316, 211 N.E.2d 247, 251:

> "The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. . . . The word [charge] does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. 'To have charge of' does not necessarily imply more than to care for or to have the care of. Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing *on the ultimate factual question* of whether [a person] is 'in charge', they are not necessary or conclusive factors, . . ."

\* \* \*

> ". . . [W]hether the particular connections and activities in a given case were such that [a person] could be deemed to have charge was a question of fact for the jury to determine." (our emphasis)

The court concluded that plaintiffs failed to establish they were in charge of their offices. The evidence established that the former occupants of these offices had been chief deputies, and that they continued to be the chief deputies after the ladies were hired.

When hired, plaintiffs were told they were clerks by the new sheriff, Cliff Arnold. When the merit system was instituted in 1966, they were "rehired" as clerks. In 1968, the president of the merit board told Mrs. Janisch she was a clerk. For the entire period from 1964 through 1971, both were listed as clerks in the sheriff's budget. As a generalization, their duties involved the paperwork activities of the sheriff's department for the courts, together with such things as conducting sheriff's sales and levying tax warrants. Both Sheriff Arnold and his successor, Sheriff Nickell testified that plaintiffs were not in charge of the offices. Each testified that he was in charge of those offices. In addition, the court found there was no evidence that either plaintiff ever issued

any orders or directives to anyone. Evidence of the clerk-like nature and limitations of plaintiffs' duties was circumstantial evidence bearing on whether they were in charge of the offices.

As the court found they were not in charge, and a reasonable man might reach the same conclusion, we will not substitute our judgment for the court's, or reweigh the evidence. *Houser* v. *Bd. of Commr's* (1969), 252 Ind. 312, 247 N.E.2d 675.

Plaintiffs correctly argue that the court's conclusion of law that their wage claim was barred by laches is erroneous. However, the court also entered its conclusion of law that the law was with defendants and against the plaintiffs. As that conclusion on the wage issue was proper on the finding that plaintiffs were not in charge, the error in also applying the equitable doctrine of laches is harmless. See, *Anselm* v. *Anselm* (1947), 118 Ind. App. 169, 75 N.E.2d 921.

THE DISCHARGE:

On July 29, 1971, the plaintiffs were brought before the merit board on a charge containing six specifications seeking their discharge. The specifications essentially assert their alleged conduct in commencing the wage suit without first presenting the claim through available administrative machinery, in holding press conferences regarding the wage matter and in repeatedly refusing to comply with a written order to cease wearing uniforms. These specifications occur in context with various grounds for discharge set out in the department's rules and regulations.

We limit our discussion to the matters specifically argued by plaintiffs.

In July, prior to the hearing on the charges, the merit board had adopted a resolution stating:

"Now, therefore be it resolved that the LaPorte County Sheriff's Merit Board has determined that only Department employees engaged full time as Regular or Superior Police

Officers, subject to the risk of personal injury or death involved, who are required to work regular police hours as set out in the Department Rules and Regulations, Section D, Paragraph 2, 3, 4, or 5, and who are required to learn all of the basic skills as required in Section I of the Rules and Regulations are entitled to the benefits set out in the LaPorte County Police Plan and that no employee hired or demoted to the category of Limited Officer, as designed [sic] in Section D, Paragraph 6, of the Department Rules and Regulations or others whose sole duty is the service of civil process is entitled to those benefits. However, such employees may be properly enrolled in the Public Employees Retirement Fund."

Apparently pursuant to this determination, prior to commencement of the discharge hearing, the board president announced that plaintiffs were not, as a matter of right, entitled to the hearing they were about to receive.

Plaintiffs first assert that the resolution and announcement *per se* denied plaintiffs their rights under the merit system and voided the discharge. We disagree. In a display of administrative wisdom too seldom exercised, the board proceeded in the manner prescribed by the plan, which included notice, written charges, advance summary of evidence, right to counsel and right to call and cross examine witnesses. It appears that plaintiffs were afforded a fair hearing as prescribed by the plan, and therefore they demonstrate no prejudicial harm from either the resolution or the board president's statement.

Plaintiffs additionally argue that at the July meeting when the resolution was adopted, the board considered evidence outside plaintiffs' presence in contravention of the doctrine of *Doran* v. *Bd. of Education* (1972), 152 Ind. App. 250, 283 N.E.2d 385; and *State Bd. Tax Commr's* v. *Oliverius* (1973), 156 Ind. App. 46, 294 N.E.2d 646.

We believe the argument is misplaced. The resolution dealt with a determination of personnel falling within and without the merit plan. Certainly the functions performed by each of the plaintiffs were considered. However, plaintiffs were

not prejudiced thereby, since they were in fact afforded the hearing to which the merit plan would entitle them.

On the other hand, if the assertion is that the board considered *in camera* evidence regarding the charges filed against plaintiffs, the assertion fails for want of proof. Neither the briefs, the motion to correct errors, nor the record disclose any evidence adduced at the trial that such activity occurred.

Plaintiffs next assert that the discharge should be set aside because the merit review board was illegally constituted. The foundation of this contention is the testimony of the board president that every winter he vacations in Florida and that he owns a condominium apartment and furniture that he utilizes while there. IC 1971, 17-3-14-2, Ind. Ann. Stat. § 49-2822 (1974 Supp.) does require that members of the merit board be residents of the county. However, it has long been recognized that mere temporary absenses without intent to change domicile or to abandon an office or cease to discharge its duties will not terminate title to an office on grounds of non-residency. *Relender* v. *State* (1898), 149 Ind. 283, 49 N.E. 30. The fact that the board president elected to own his vacation retreat does not alter the rule or its applicability.

Finally, plaintiffs contend that their repeated refusal to obey the special order requiring all department clerks to wear conventional dress could not constitute grounds for discharge because the order was unlawful.[1] As authority they cite IC 1971, 17-3-11-2, Ind. Ann. Stat. § 49-2811 (1964 Repl.) which provides:

> "Each of the several counties of the state of Indiana shall furnish uniforms for the sheriff and his full time paid deputies."

---

1. The department rules and regulations provide for the issue by the sheriff of general and special orders. The order in Special Order 1 concerned all personnel carried as clerks on the budget. There was, in fact, a third person in this same category who apparently promptly complied with the order. At the merit board hearing, Mrs. Marthinsen testified that she disobeyed the order because she thought the sheriff issued it just to harass her. Mrs. Janisch admitted disobeying the order, but gave no reason why.

The simplest answer is that while the statute requires the counties to furnish uniforms, it does not mandate that all concerned shall be required to wear a uniform. While we believe this apparent from the context of the statute, it is further evidenced by the 1972 amendment, which simply added the phrase:

".... or such clothing as may be required to carry out the duties of a sheriff or deputy sheriff." IC 1971, 17-3-11-2, Ind. Ann. Stat. § 49-2811 (1974 Supp.)

In addition, however, an examination of the record does not reveal that plaintiffs ever asserted to the trial court, or on appeal, that the five other charges leveled against them were either unproven, or if proven, would not constitute cause for discharge. Accordingly, even if plaintiffs were not guilty of refusing to obey the sheriff's order, setting aside the discharge would be unwarranted.

The plaintiffs have failed to demonstrate reversible error. Judgment affirmed.

Hoffman, C.J. and Staton, J., concur

NOTE.—Reported at 315 N.E.2d 387.