**CITY OF MARION, Appellant (Defendant Below),**

v.

**Jack ANTROBUS, Appellee (Plaintiff Below).**

No. 2–582A143.

Court of Appeals of Indiana, Second District.

May 2, 1983.

Rehearing Denied Aug. 1, 1983.

---

James F. Kocher, Stephen Johnson, Biddinger & Johnson, Marion, for appellant.

John C. Ruckelshaus, Walter C. Lockhart, Ruckelshaus, Roland & O'Connor, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant City of Marion (the City) appeals a summary judgment denying dismissal of policeman-plaintiff-appellee Jack Antrobus (Antrobus), claiming among other things that the trial court lacked subject matter jurisdiction, that the court erred in concluding the Marion Board of Public Works and Safety (the Board) lacked a quorum to conduct business, and that attorney's fees should not have been awarded.

We affirm in part and reverse in part.

## FACTS

The uncontroverted facts reveal that in October, 1980, the Chief of the Marion, Indiana, Police Department filed a complaint with the Board[1] for disciplinary action against Antrobus, a nine and one half year veteran of the Marion Police Department.

The Board held a hearing on October 27, 1980. At the beginning of the hearing, and prior to any evidence being submitted, the city attorney disqualified himself as a voting member of the Board. The city attorney indicated that the City had employed a special independent hearing judge to preside over the proceedings who would not be a voting member. Antrobus then moved for a dismissal of the pending charges based upon the illegal composition of the Board claiming the two remaining board members were ineligible to serve on the Board and that therefore there was no legal quorum of members to conduct official business. The hearing officer denied the motion in part and took the rest under advisement. The hearing proceeded, and at its conclusion, the Board dismissed Antrobus from the Marion Police Department.

Antrobus appealed the Board's decision to the Grant County Superior Court[2] on the basis that the Board lacked a legal quorum to conduct business for two reasons: First, the city civil engineer, James Weagley (Weagley), resided outside the corporate limits of the city of Marion and therefore did not meet the statutory residency requirements. Second, Evelyn Copeland (Copeland), city controller, was ineligible to sit on the Board because she had been illegally appointed to the Board and also because she was the mother of one of the police officers who was listed as a witness against Antrobus.

1. "(b) In all cities of the second class the duties of the 'board of public works' and the duties of the 'board of public safety' shall be transferred to and performed by a board to be known as the 'board of public works and safety', which board shall be composed of the city controller, the city civil engineer, and the city attorney; such officers shall serve as members of such board without additional compensation therefor, other than as hereinafter provided in IC 1971, 18–2–1–12: Provided, That the common council of any city of the second class may, by ordinance duly enacted, create two (2) separate boards to be known respectively as the 'board of public works', and the 'board of public safety'."
   Ind.Code 18–2–1–4.2 (1976), repealed effective September 1, 1981. For the current provisions concerning the establishment and composition of the board of public works and safety, *see* Ind.Code 36–4–9–5, 36–4–9–6 (1982).

2. "(b) Any member of such fire or police force who is dismissed from such force, as aforesaid, or is suspended therefrom from any period in excess of ten (10) days or reduced in grade shall have the right to appeal to the circuit court or superior court of the county in which such city is located, from such decision of dismissal or suspension or reduction in grade by said board, but shall not have the right of appeal from any other decision. Such appeal shall be taken by such party filing in such court; within thirty (30) days after the date such decision is rendered, a bond as herein required and a verified complaint stating in concise manner the general nature of the charges against him or her, the decision of the board thereon, and a demand for the relief asserted by plaintiff. Such city shall be named as the sole defendant and the plaintiff shall cause summons to issue as in other cases against such city.... At the time of filing any such complaint, the plaintiff or plaintiffs shall file a bond, the conditions of which shall be that such appeal will be prosecuted to a final determination and that the plaintiff, or plaintiffs, will pay all costs adjudged against the same. Such bond shall be subject to approval as such bonds for costs are approved in other cases. The decision appealed from shall not be stayed or affected pending the final determination of such appeal, but shall remain in full force and effect until and unless modified or reversed by the final judgment of the court."
   Ind.Code 18–1–11–3(b) (Supp.1980). For current provision, *see* Ind.Code 36–8–3–4(e) to –4(g) (1982).

On March 18, 1981, Antrobus filed his motion for summary judgment with supporting exhibits and a memorandum. The City responded with several affidavits and a response to the motion for summary judgment.

On December 2, 1981, the trial court, finding no genuine issue of material fact, entered summary judgment in favor of Antrobus because, as a matter of law, the Board lacked a legal quorum and therefore its decision was illegal and void. The trial court ordered that Antrobus be reinstated to the police department retroactive to October 27, 1980, with full restoration of pay and all other benefits, plus interest. The trial court also awarded Antrobus $3,000.00 in attorneys fees.

On December 10, 1981, the City filed a motion to dismiss for lack of subject matter jurisdiction, a motion to stay the enforcement of the court's judgment, and a combined motion to correct errors and petition for rehearing. After a hearing, the trial court denied these motions, and the City now appeals.

## ISSUES

The issues are essentially three in number:

1. Did the trial court have jurisdiction?
2. Did the Board lack a legal quorum so that its actions were a nullity?
3. Did the trial court err in awarding attorney's fees? [3]

## DECISION

ISSUE ONE—Did the trial court have jurisdiction?

PARTIES' CONTENTIONS—The City claims the trial court lacked subject matter jurisdiction because Antrobus failed to post the bond with his verified complaint as required by IC 18–1–11–3(b).[4]

Antrobus responds that the City waived this jurisdictional issue by not objecting timely.

CONCLUSION—The trial court properly exercised jurisdiction.

As there appears to be no genuine issue of material fact in this case, the sole question is whether the law was properly applied. *Campbell v. Eli Lilly & Co.,* (1980) Ind.App., 413 N.E.2d 1054; *Stout v. Tippecanoe County Dept. of Public Welfare,* (1979) Ind.App., 395 N.E.2d 444.

Ordinarily, the failure to adhere strictly to statutory procedures for perfecting appeals results in a jurisdictional defect that precludes judicial review of an administrative adjudication as a matter of law. *See e.g., Indiana State Personnel Board v. Parkman,* (1969) 252 Ind. 44, 245 N.E.2d 153; *Gleason v. Real Estate Commission,* (1973) 157 Ind.App. 344, 300 N.E.2d 116. However, the jurisdictional defect involved in the present case—failure to post bond—does not involve subject matter jurisdiction, only jurisdiction of the particular case.[5]

▮▮▮ Jurisdiction of the subject matter refers to jurisdiction over the class of cases to which the particular case belongs. *See, e.g., State ex rel. Johnson v. Reeves,* (1955) 234 Ind. 225, 125 N.E.2d 794. Jurisdiction of the subject matter must be derived from the constitution or from a statute, and cannot be conferred by consent of the parties. *State ex rel. Wilson v. Howard Circuit Court,* (1957) 237 Ind. 263, 145 N.E.2d 4; *Farley v. Farley,* (1973) 157 Ind.App. 385,

---

3. In its appellate brief, the City argued the trial court had been improperly prejudiced by a letter from Antrobus's counsel and therefore should have disqualified himself. However, the City did not raise this issue in its motion to correct error and therefore it is waived. Ind. Rules of Procedure, Trial Rule 59, Appellate Rule 8.3(A)(7); *Baugher v. A. Hattersley & Sons, Inc.,* (1982) Ind.App., 436 N.E.2d 126, 129.

4. *See* Footnote 2 *supra* for text. For current provision, *see* Ind.Code 36–8–3–4(f) (1982).

5. There is no issue in the present case as to personal jurisdiction, the third element of jurisdiction, because the general appearance by the City waived any question in this regard. *E.g., State ex rel. Johnson v. Reeves,* (1955) 234 Ind. 225, 125 N.E.2d 794; *Associated Truck Lines, Inc. v. Velthouse,* (1949) 227 Ind. 139, 84 N.E.2d 54.

300 N.E.2d 375; 1 A. BOBBITT, IND. APPEL-LATE PRACTICE AND PROCEDURE ch. 5 § 3 (1972). By virtue of IC 18–1–11–3(b), the trial court had subject matter jurisdiction of this case.

▮ Jurisdiction of the particular case refers to the right, authority, and power to hear and determine a *specific case* within that class of cases over which a court has subject matter jurisdiction. *See, e.g., State ex rel. Gilbert v. Kosciusko Circuit Court,* (1960) 241 Ind. 122, 170 N.E.2d 51; *State ex rel. Oviatt v. Knowles,* (1957) 236 Ind. 517, 141 N.E.2d 854; *State ex rel. Johnson v. Reeves, supra; Farley v. Farley, supra;* 1 A. BOBBITT, *supra,* ch. 5 § 4.

▮ Although questions concerning subject matter jurisdiction may be raised at any time, attacks on the trial court's juris-diction of the particular case must be raised at the earliest opportunity possible or they are waived. *State ex rel. Dean v. Tipton Circuit Court,* (1962) 242 Ind. 642, 181 N.E.2d 230, 235–36; *State ex rel. Johnson v. Reeves, supra; State ex rel. Sacks Brothers Loan Co., Inc. v. DeBard,* (1978) Ind.App., 381 N.E.2d 119, 120. In the present case the City did not raise the issue of Antro-bus's failure to post bond in the trial court until after judgment. This was too late to preserve the issue for appellate review, and the City is thus bound by the trial court's determination that it had jurisdiction. *State ex rel. Allman v. Grant Superior Court,* (1939) 215 Ind. 249, 19 N.E.2d 467, 469–70; *State ex rel. Sacks Brothers Loan Co. v. DeBard, supra.*

ISSUE TWO—Did the trial court err in concluding the Board lacked a legal quo-rum?

PARTIES' CONTENTIONS—The trial court found that the Board lacked a legal quorum because, in part, Weagley (the City Engineer) resided outside the corporate lim-its of the city of Marion at the time of the hearing and therefore did not meet the statutory residency requirements of Ind. Code 18–1–6–5 (1976). The City contends this conclusion was contrary to law and to the evidence. The City reasons the statute only required Board members to be resi-dents for one year prior to appointment and Weagley's affidavit establishes that he had been a resident for one year prior to his appointment. If the court required residen-cy at the time of the hearing, it was acting contrary to law, the City asserts.

Antrobus responds that, although the statute does not specifically require residen-cy at the time of the hearing, such must have been the intent of the legislature. CONCLUSION—The trial court correctly concluded that the Board lacked a legal quorum.

▮ IC 18–1–11–3 guaranteed that be-fore being dismissed by the Board, a police officer is entitled to a hearing and an adju-dication on the record. The due process clauses of the United States and Indiana Constitutions require that such a hearing before the Board be full and fair, conducted in good faith and before an impartial body. *Wong Yang Sung v. McGrath,* (1950) 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; *Morgan v. United States,* (1938) 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129; *City of Mishawaka v. Stewart,* (1974) 261 Ind. 670, 310 N.E.2d 65, 68; *Tryon v. City of Terre Haute,* (1964) 136 Ind.App. 125, 193 N.E.2d 377. Any decision of the Board predicated upon a hearing devoid of the requisite require-ments is illegal and void. *State ex rel. Felthoff v. Richards,* (1932) 203 Ind. 637, 180 N.E. 596. One of the requisites of a fair hearing is that the administrative board have a legal quorum, which in this case consisted of two of three members. Ind.Code 18–1–11–2 (1976) (recodified as Ind.Code 36–8–3–3 (1982)); *City of Misha-waka, supra.*

▮ Here the parties agree that the com-position of the Board was controlled by statute. As it then existed, IC 18–2–1–4.2 provided that in second class cities the Board of Public Works and Safety was to be composed of the city controller, the city civil engineer and the city attorney. It is uncontroverted that the city attorney dis-qualified himself on the grounds of a con-flict of interest. This disqualification not-

withstanding, there appeared to be a quorum present to conduct business inasmuch as the city controller (Copeland) and the city civil engineer (Weagley) were present. However, prior to the beginning of the hearing, Antrobus objected to the composition of the Board. His objection as to Copeland was overruled but his objection as to Weagley was taken under advisement. In any event, if we find that either one of the two remaining Board members was not legally sitting on the Board, we must uphold the trial court's summary judgment that there was no legal quorum.

Our conclusion is that the trial court correctly ruled that Weagley was not a member of the Board,[6] because he failed to meet the residency requirement of Section 6 of Article 6 of the Indiana Constitution.

Antrobus objected to Weagley's presence on the Board on the basis of IC 18–1–6–5 which provided in pertinent part:

"No person shall be appointed as the head of any department, or as a member of any board herein provided for, *unless he shall have been a resident and elector of such city for one (1) year immediately prior thereto.*"

(Emphasis supplied). *See* Ind.Code 36–4–9–2 (1982). We agree with the City that the statute apparently refers to the residency requirement for *appointments* and does not necessarily concern the residency requirements, if any, *after* appointment. We also agree that, by virtue of his affidavit, Weagley established his right to be duly appointed as a member of the Board. But the dispositive question in this case is *whether a duly qualified Board member must continue to reside in the City after he has assumed his responsibilities.*

In answering this question, we do not write on a clean slate. The Indiana Constitution, Article 6, § 6 provides as follows:

"*All* county, township, and *town officers, shall reside within their respective* counties, townships, and *towns;* and shall keep their respective offices at such places therein, and perform such duties as may be directed by law."

(Emphasis supplied).[7] This provision means what it says:

"This constitutional requirement can only reasonably be interpreted to mean that the officers mentioned *shall be residents when serving* as such officers, not that they shall be inhabitants of the city when appointed...."

*Sarlls v. State ex rel. Trimble,* (1929) 201 Ind. 88, 166 N.E. 270, 277 (emphasis supplied; footnote omitted). Thus, if a member of the Board of Public Works and Safety is a city "officer," he/she must, under our constitution, reside within the City.

The statute creating the Board describes the board members as "officers." See footnote 1 *supra.* Moreover, an "office" has been defined as a position that involves the exercise of sovereign powers of the State. 1977 Op.Ind. Att'y Gen. 4, at 10; 1970 Op. Ind. Att'y Gen. 13, at 30. So, the Board must be considered sovereign because it exercises a variety of executive and judicial functions, especially with regard to public safety.[8] Each member of the Board of

---

**6.** Because we so decide, we need not consider the City's arguments that the trial court erred in finding that Copeland was not a legal board member and that the appointment of the special hearing officer was illegal.

**7.** The term "town" as used in this constitutional provision is generic and is employed therein as comprehending cities. *State ex rel. Gleason v. Gerdink,* (1909) 173 Ind. 245, 90 N.E. 70; *City of Indianapolis v. Higgins,* (1895) 141 Ind. 1, 40 N.E. 671.

**8.** IC 18–2–1–4.2 mandated that the Board assume and perform the duties of the board of public safety which duties were set forth in Ind.Code 18–1–11–1 (1976) as follows:

"Such board shall have the care, management, supervision and exclusive control of all matters and property relating to or connected with the fire and police forces, to the fire alarm, telegraph, fire escapes, the inspection of building and boilers, market places and the food sold therein, and to pounds and prisons. Such board shall have power to purchase all necessary supplies and apparatus and make all repairs needed in its department, subject to the same provisions as are in this act prescribed for exercise of similar powers by the department of public works.... Such commissioners shall have power, for cause assigned on a public hearing, and on due notice, according to rules to be promulgated

Public Works and Safety holds an "office" as that word is contemplated by Article 6 § 6; and by virtue of that constitutional provision, the members of the Board must reside within the city while in office.

Although we are unaware of any case that discusses the residency requirements for members of a board of public works and safety, our conclusion is bolstered by authority concerning similar public officers. In discussing the residency requirement of county commissioners, our Supreme Court of Indiana interpreted residency to mean an incumbent must actually reside within the governmental unit while in office:

> "*Members of a board of commissioners are* certainly county *officers, and,* by the positive command of the constitution, they *are required to reside within the county where they serve* as such officers, and perform such duties as the law may direct. The provision of our fundamental law which restricts the residence of a county officer to his county must be construed as requiring him to be a resident thereof,—not in the general sense of that term, but *he is required to actually reside therein during the time he is the incumbent of the office.* This holding is fully supported by the decision in the appeal of *State v. Allen,* 21 Ind. 516.

*Relender v. State ex rel. Utz,* (1898) 149 Ind. 283, 288, 49 N.E. 30, 32 (emphasis supplied). *See also Willsey v. Newlon,* (1974) 161 Ind.App. 332, 316 N.E.2d 390 (residency requirement applied to justice of the peace); 1977 Op.Ind. Att'y Gen. 4, at 10 (member of city board of parks and recreation is officer and must reside within city); 1967 Op.Ind. Att'y Gen. 36, at 238 (city judge of second class city is officer and must reside within city); 1960 Op.Ind. Att'y Gen. 51, at 302 (justice of the peace); 1958 Op.Ind. Att'y Gen. 27, at 119 (residency requirement applied to township trustee); 1956 Op.Ind. Att'y Gen. 9, at 34 (members of city board of health are officers and must reside within corporate limits of city); 1944 Op.Ind. Att'y Gen. 58, at 242 (residency requirement applied to township trustee). *Cf. Janisch v. LaPorte County,* (1974) 161 Ind.App. 226, 315 N.E.2d 387 (county sheriff's board president who vacationed at Florida condominium fit within temporary absence exception); 1948 Op.Ind. Att'y Gen. 62, at 384 (town trustee does not vacate office by moving from one ward to another *within* corporate limits of said town).

At the time of the hearing, Weagley lived across the street from Antrobus, *outside* the corporate limits of Marion. *Record* at 184.[9] He was therefore in violation of Article 6, § 6.

ISSUE THREE—Did the trial court err in awarding attorney's fees?

PARTIES' CONTENTIONS—The City argues that Ind.Code 18–1–11–3(d) (Supp. 1980) did not provide for such an award.

Antrobus disagrees with this statutory interpretation, claiming the phrase "judgment as it deems proper ... together with such judgment for the cost of such appeal as the court may deem proper," authorizes the trial court to award attorney's fees for processing an appeal from a decision of the Board. Antrobus further argues that the statutory provision providing for the payment to the party entitled thereto any wages or salary withheld pending appeal does not limit or bar recovery for attorney's fees.

CONCLUSION—The trial court erred in awarding attorney's fees.

■ Indiana follows the American Rule concerning attorney's fees:

---

by them, to remove or suspend from office, or for a definite period deprive of pay, any officer or member of such police force, except that detectives may be dismissed at any time by said commissioners, and they shall have power to make general and special rules and regulations for the government and discipline of said force, and to make and promulgate general and special orders to said force, through the superintendent of police, who shall be the executive head of the force[.]" (For current provisions, *see* Ind.Code 36–8–3–2, –4 (1982)).

9. In its Response to Motion for Summary Judgment, the City conceded that Weagley lived outside the Marion corporate limits at the time of the hearing. *Record* at 227.

"The general rule requires each party to the litigation to pay his own counsel fees. Attorney's fees are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof; and it has been held that the rule applies equally in courts of law and in courts of equity."

*Trotcky v. Van Sickle,* (1949) 227 Ind. 441, 445, 85 N.E.2d 638, 640 (quoting 15 C.J. 114, § 248); *St. Joseph's College v. Morrison, Inc.,* (1973) 158 Ind.App. 272, 302 N.E.2d 865. However, Indiana also recognizes three exceptions to this general rule: (1) the "bad faith" exception, (2) the "common fund" exception, and (3) the "private attorney general" exception. *Cox v. Ubik,* (1981) Ind.App., 424 N.E.2d 127, 129.

█ To justify the award of attorney's fees by the trial court in this case, Antrobus seeks sustenance only from IC 18–1–11–3(d), which provided in pertinent part:

"If the court finds that the action or decision of the board appealed from should not be affirmed in all things, then the court shall make a general finding, setting out, however, sufficient facts to show the nature of such proceeding and the court's decision thereon, and shall render judgment either reversing the decision of the board, or ordering the same to be modified as the court shall find and adjudge to be proper and in the event of trial by jury if the decision of the board be sustained or reversed then the court shall render such *judgment as it deems proper* in the same manner as in appeals tried by the court alone, *together with such judgment for the cost of such appeal as the court may deem proper.* . . . If such decision be reversed or modified, then such board shall pay to the party entitled thereto any salary or wages withheld from such party pending such appeal and to which he or she may be entitled under the judgment of said court."

(Emphasis added).[10] Conspicuously absent from this statutory provision are the famil-

iar words "reasonable attorney's fees." Thus we conclude the trial court erred in awarding attorney's fees to Antrobus.

Although the statute makes a general reference to "costs" there is no special definition provided as to what a court may consider as costs and Antrobus does not point to any such special definition. Moreover,

"[i]t has long been established in this State . . . that the bare term 'costs' does not encompass attorney fees. *Hutts v. Martin* (1893), 134 Ind. 587, 33 N.E. 676. The majority of jurisdictions have agreed with this construction and it is widely held that the use of the word 'costs' in a statute is not intended to provide for the payment of attorney fees. 26 A.L.R.2d 1295; 27 Am.Jur.2d Eminent Domain § 476."

*State v. Holder,* (1973) 260 Ind. 336, 295 N.E.2d 799, 800–801. *Accord, Gavin v. Miller,* (1944) 222 Ind. 459, 54 N.E.2d 277.

The phrase "judgment as it deems proper" does not permit a trial court to award attorney's fees, although Antrobus would have us believe otherwise. Any such interpretation would violate the American Rule.

As IC 18–1–11–3(d) did not expressly provide for an award of attorney's fees and as there appears to be no basis for application of any of the recognized equitable exceptions, attorney's fees should not have been awarded. The lawyer must look to his client for his fee. As Abraham Lincoln said many years ago, "The matter of fees is important, far beyond the mere question of bread and butter involved. Properly attended to, fuller justice is done to both lawyer and client."

Therefore, that part of the trial court's judgment that concerns attorney's fees is reversed.

Affirmed in part; reversed in part.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.

10. For the current provisions, *see* Ind.Code 36– 8–3–4(i), –4(j) (1982).