**Bradley A. TURNER, on behalf of himself and all others similarly situated, Appellant–Plaintiff,**

v.

**CITY OF EVANSVILLE, Evansville City Police Department, City of Evansville Police Merit Commission, Marvin D. Guest, Sr., Ira T. Neal, Bonnie Benson, Steven D. McDaniel, Ray Hamner, Arthur A. Gann, and Evansville Lodge No. 73 Fraternal Order of Police, Inc., Appellees–Defendants.**

No. 82A05–9908–CV–358.

Court of Appeals of Indiana.

May 4, 2000.

Transfer Granted Aug. 15, 2000.

---

150

Jeffrey W. Waggoner, Indianapolis, Indiana, Attorney for Appellant.

Michael D. Marine, Bradley L. Williams, Ice, Miller, Donadio & Ryan, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

ROBB, J.

Bradley Turner appeals from the trial court's grant of summary judgment in favor of the Defendants, City of Evansville, Evansville City Police Department, City of Evansville Police Merit Commission, Marvin D. Guest, Sr., Ira T. Neal, Bonnie Benson, Steven D. McDaniel, Ray Hamner, Arthur A. Gann, and Evansville Lodge No. 73 Fraternal Order of Police, Inc. (collectively referred to as the "City Defendants"), on his complaint. We affirm.

### Issues

Turner raises five issues for our review, which we consolidate and restate as follows:

1. Whether the ordinance establishing the Evansville Police Merit Commission ("Merit Commission") complies with Indiana law;

2. Whether the discipline imposed by the Chiefs of Police are legal nullities because of violations of Article 6, section 6 of the Indiana Constitution;

3. Whether the City has violated the principle of nondelegation by enter-

ing into an agreement with the Fraternal Order of Police ("FOP") which requires the approval of at least one FOP representative to amend the merit ordinance; and

4. Whether the trial court properly granted summary judgment for the City Defendants.

*Facts and Procedural History*

In 1995, Turner was hired by the Merit Commission to be an officer with the Evansville Police Department ("EPD"). At that time, Arthur Gann was the EPD Chief. On April 3, 1997, Turner received a written reprimand from Chief Gann for failing to use reasonable care with his squad car. On November 20, 1997, Turner received a second written reprimand from Chief Gann for failing to follow EPD's Standard Operating Procedures. On August 3, 1998, Chief Gann imposed a twenty-one day suspension (with pay) against Turner for giving false information in a disciplinary action against another EPD officer. Turner filed a notice of appeal with the Merit Commission regarding this disciplinary action. On August 20, 1998, Maurice Guest replaced Gann as the EPD Chief. Chief Guest subsequently amended the previous discipline and suspended Turner for twenty-one days *without* pay. Turner filed a notice of appeal with the Merit Commission regarding this amended disciplinary action.

On October 23, 1998, Chief Guest imposed a ten day suspension without pay against Turner for failing to follow Standard Operating Procedures and for repeated violations. Turner filed a notice of appeal regarding this action with the Merit Commission. On December 10, 1998, Chief Guest imposed a three day suspension without pay against Turner for being absent from roll call, failing to be at his post on time, and repeated violations. Turner filed a notice of appeal with the Merit Commission.

Turner's appeals of the August, October, and December disciplinary actions remain

pending before the Merit Commission because, before they could be heard, Turner filed a complaint against the City Defendants alleging various constitutional and statutory violations in the merit process. He also sought and was granted a temporary injunction enjoining the City Defendants from conducting a hearing on the disciplinary actions pending against him. The City Defendants filed a motion to dismiss with accompanying affidavits. After a hearing, the trial court, treating the motion to dismiss as a motion for summary judgment due to the extrinsic evidence submitted in support thereof, granted summary judgment for the City Defendants and against Turner on his complaint. The injunction against any disciplinary proceedings before the Merit Commission remains in effect while this appeal is pending. Additional facts will be supplied as necessary.

*Discussion and Decision*

I. Summary Judgment Standard of Review

■■■ Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Estate of Pflanz v. Davis*, 678 N.E.2d 1148, 1150 (Ind.Ct.App.1997). If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting infer-

ces on such an issue. *Downs v. Panhandle E. Pipeline Co.*, 694 N.E.2d 1198, 1200 (Ind.Ct.App.1998), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *General Accident Ins. Co. of Am. v. Hughes*, 706 N.E.2d 208, 210 (Ind.Ct.App.1999), *trans. denied.*

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Pflanz*, 678 N.E.2d at 1151. We liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Dunifon v. Iovino*, 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *trans. denied.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Jones v. Western Reserve Group*, 699 N.E.2d 711, 714 (Ind.Ct.App. 1998), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Sims v. Barnes*, 689 N.E.2d 734, 735 (Ind. Ct.App.1997), *trans. denied.*

## II. Merit Commission

Turner contends that the trial court erred as a matter of law in determining that the ordinance establishing and governing the Merit Commission is in compliance with Indiana law. If the Merit Commission is not properly constituted, Turner denies its authority to hear and determine his disciplinary appeal.

### A. Uniform Merit System

Prior to 1980, the Indiana legislature enacted several statutes for the establishment of police and fire department merit systems. The statute applicable to Evansville, as a second-class city with a population between 160,000 and 180,000 in a county with only one second-class city, was found at Indiana Code chapter 19–1–31.5. In 1980, the legislature enacted Indiana Code section 36–1–4–14, which provides that "[a] unit may hire and discharge employees and establish a system of employment for any class of employees based on merit and qualification." At some time prior to October 1982, Evansville adopted a city ordinance establishing a police merit system, which provided that the Merit Commission would "consist of three (3) members who shall be resident voters of the City." R. 40.

In 1981, the legislature revised the existing general police and fire merit statute, found at Indiana Code chapter 18–1–11, and re-codified it at Indiana Code chapter 36–8–3. Also in 1981, the legislature enacted Indiana Code chapter 36–8–3.5. Section 1 of this statute provided as follows:

(a) This chapter applies to each municipality or township that has a full-time, paid police or fire department. It provides the exclusive statutory manner for such a unit to exercise the power of establishing a merit system for its police or fire department. This chapter does not affect merit systems established under any other authority, except as provided by subsection (b).

(b) If a city had a merit system for its police or fire department under ... IC 19–1–31.5, ... it may retain that system by ordinance of the city legislative body passed before January 1, 1983. The ordinance must incorporate all the provisions of the prior statute and may not be amended or repealed by the legislative body before January 1, 1985. If the legislative body decides to repeal the ordinance after December 31, 1984, the legislative body shall in the repealing ordinance also establish a new merit system under section 3 of this chapter.

(c) If a city had a merit system for its police or fire department under a prior statute but fails to retain that system under subsection (b), the city legislative body shall, before July 1, 1983, pass an ordinance to establish a new merit system under section 3 of this chapter.... However, if a new merit system is rejected under section 4 of this chapter ..., within thirty (30) days the city legislative body shall adopt an ordinance to retain the prior merit system.

Ind.Code § 36–8–3.5–1 (1981). This chapter further provides that a merit commission shall consist of five members, each of whom must have been a legal resident of the unit for three consecutive years preceding his or her term. Ind.Code § 36–8–3.5–6(a), (b). In October 1982, the Evansville Common Council adopted an ordinance retaining the City's existing police merit system:

WHEREAS, I.C. 36–8–3.5–1 indicates that a City may retain a merit system passed under I.C. 19–1–31.5–1 by passing an ordinance before January 1, 1983, incorporating all the provisions of I.C. 19–1–31.5–1; and

WHEREAS, the Common Council of the City of Evansville wishes to do so,

NOW, THEREFORE, BE IT ORDAINED by the Common Council of the City of Evansville that the merit system previously set forth at I.C. 19–1–31.5–1, and set forth below, be retained ....

R. 39. As stated above, the City's existing merit system called for a Merit Commission consisting of three members.

In December 1987, the Indiana Supreme Court handed down a decision in which it held that "[w]hen a municipality or township modifies an existing plan or creates a new one, I.C. 36–8–3.5 becomes controlling." *City of Evansville v. International Ass'n of Fire Fighters, Local 357*, 516 N.E.2d 57, 60 (Ind.1987). Prior to that decision, the City's merit ordinance had been modified several times, most recently in June and December of 1987. The December amendment provided that the "Po-

lice Merit Commission shall consist of three (3) members who shall be resident voters of the *County of Vanderburgh.*" R. 70 (emphasis added).

In 1988, the legislature amended Indiana Code section 36–8–3.5–1 to read as follows:

(a) This chapter applies to each municipality or township that has a full-time paid police or fire department. A municipality may exercise the power of establishing a merit system for its police or fire department under this chapter or by ordinance adopted under IC 36–1–4–14. This chapter does not affect merit systems established:

(1) by ordinance under Ind.Code 36–1–4–14, except as provided by subsection (e);

(2) by a prior statute, except as provided by subsection (b).

(b) If a city had a merit system for its police or fire department under the former ... IC 19–1–31.5, ... it may retain its system by ordinance of the city legislative body passed before January 1, 1983. The ordinance must initially incorporate all the provisions of the former statute but may be amended by the legislative body after December 31, 1984....

(c) After December 31, 1984, the legislative body also may repeal the ordinance described in subsection (b), but the legislative body shall in the repealing ordinance concurrently establish a new merit system under section 3 of this chapter. (This subsection does not require the legislative body to establish a new merit system when it exercises its power to amend the ordinance under subsection (b).)

## B. Evansville's Merit System

■ Turner contends that, as presently constituted, the Merit Commission fails to comply with Indiana statute. He argues that Indiana Code chapter 36–8–3.5 governs the City's police merit system for two

reasons: first, because the City modified its police merit system ordinance twice in 1987, when such modification triggered required compliance with chapter 36–8–3.5 pursuant to the *City of Evansville* decision; and second, because the 1988 amendments to section 36–8–3.5–1 cannot be applied retroactively to excuse the City's already-required compliance chapter 36–8–3.5. Thus, Turner contends that the City is required to have a five-member resident Merit Commission.[1]

We must disagree with Turner's premise. As neither party alleges otherwise, we will assume that the City's police merit ordinance complied with the provisions of Indiana Code chapter 19–1–31.5, the statute under which it was enacted. Thus, in 1982, when the City elected to retain its existing merit system and passed an ordinance so stating, the City was in compliance with section 36–8–3.5–1(b). Had the legislature not amended section 36–8–3.5–1 in 1988, we would agree that the *City of Evansville* decision compels the conclusion that the City's 1987 modifications to the merit system ordinance would have required compliance with chapter 36–8–3.5. However, the 1988 amendment addresses the very situation we are presented with here and by its plain language, is necessarily retroactive.

We presume that the legislature intends statutes and amendments to apply prospectively, absent express indication otherwise. To apply an amendment retroactively without a clear indication of the legislature's intent to do so requires that strong and compelling reasons exist. *Estate of Robinson by Robinson v. C & I Leasing, Inc.*, 691 N.E.2d 474, 476 (Ind.Ct. App.1998), *trans. denied.* Here, the 1988 amendments to section 36–8–3.5–1 state

that a retained merit ordinance "must initially incorporate all the provisions of the former statute *but may be amended by the legislative body after December 31, 1984.*" Ind.Code § 36–8–3.5–1(b) (emphasis added). Had the legislature intended the amendment to act only prospectively, it would have stated that amendments to retained merit ordinances were permissible only *after* the amendment to the statute became effective. The only possible interpretation of the language of the amendment is that modifications made after December 31, 1984 but prior to the amendment do not require an entirely new merit system to be adopted pursuant to chapter 36–8–3.5. It appears that the amendment was made only to express the original intention of the legislature more clearly: that modifications to retained merit systems were permissible after a certain date without requiring full compliance with chapter 36–8–3.5. Thus, the City's current merit system is in compliance with Indiana law.

### III. Residence of Chief of Police

Turner contends that the trial court erred as a matter of law in determining that the Chief of Police is not an officer who is required to be a resident of the City in which he serves in order to fulfill his office, and thus, the disciplinary actions taken by Gann and Guest were not "legal nullities."

### A. Constitutional Residency Requirement

Article 6, section 6 of the Indiana Constitution states:

All county, township, and town officers, shall reside within their respective counties, townships, and towns; and shall

---

1. Turner also contends that the trial court erred in "relying on the unsupported assumption that the statutory scheme set out at I.C. 36–8–3 was 'formerly' the repealed scheme once found at I.C. 19–1–31 .5–5 and that the City of Evansville's enactment of Ordinance G–82–50 'incorporated,' in its entirety, the scheme found at I.C. 36–8–3." Brief of Ap-

pellant at 13. We agree that Indiana Code chapters 19–1–31.5 and 36–8–3 bear no direct relationship to one another; however, we do not address this issue separately as it concerns a specific finding by the trial court on which we need not rely in making our determination.

keep their respective offices at such places therein, and perform such duties, as may be directed by law.

The distinction between an "officer" and an "employee" has been explained as follows:

An office, as opposed to an employment, is a position for which the duties include the performance of some sovereign power for the public's benefit, are continuing, and are created by law instead of by contract. Generally, one who holds an elective or appointive position for which public duties are prescribed by law is a "public officer."

. . .

An officer is also distinguished by his power of supervision and control and by his liability to be called to account as a public offender in case of malfeasance in office.

*Gaskin v. Beier,* 622 N.E.2d 524, 528 (Ind. Ct.App.1993), *trans. denied* (quoting *Mosby v. Board of Comm'rs of Vanderburgh County,* 134 Ind.App. 175, 178–79, 186 N.E.2d 18, 20–21 (1962)).

In *City of Marion v. Antrobus,* 448 N.E.2d 325 (Ind.Ct.App.1983), this court considered whether a member of the city's Board of Public Works and Safety was in violation of Article 6, section 6 of the state constitution because he lived outside the corporate limits of Marion. The Chief of the Marion Police had filed a disciplinary complaint with the Board against police officer Antrobus. At the time of his hearing, by statute, the Board of Public Works and Safety was composed of the city controller, the city attorney, and the city civil engineer. In order to conduct a hearing, a legal quorum of two members of the Board was required. The city attorney disqualified himself due to a conflict of interest, leaving the city controller and the city civil engineer to conduct the hearing. However, the city civil engineer lived outside the corporate limits of the city and prior to the hearing, Antrobus objected. The trial court concluded that the Board lacked a legal quorum, and the city appealed. This court held that members of the Board are city "officers" subject to the constitutional residency requirement. *Id.* at 330–31. In so deciding, the court noted that the statute which created the Board describes the Board members as "officers" and that each member of the Board holds an "office" because he or she is in a position that involves the exercise of sovereign powers of the State in a variety of executive and judicial functions. *Id.* Similar conclusions have been reached about justices of the peace, *Willsey v. Newlon,* 161 Ind.App. 332, 316 N.E.2d 390, (1974); members of a county board of commissioners, *Relender v. State ex rel. Utz,* 149 Ind. 283, 288, 49 N.E. 30, 32 (1898); county recorders, *Yonkey and Another v. State ex rel. Cornelison,* 27 Ind. 236, 1866 WL 2550 (1866); and county auditors, *State ex rel. Cornwall v. Allen,* 21 Ind. 516, 1863 WL 2089 (1863). *See also* 1977 Op. Atty. Gen. No. 4 (members of city board of parks and recreation, deputy prosecuting attorneys, and township assessors and trustees are subject to Article 6, section 6 residency requirement).

**B. Chief of Police as an "Officer"**

■ Turner contends that, as public officers in violation of the constitutional residency requirement, the chiefs of police who served him with notices of disciplinary actions were ineligible to serve in their appointed positions, and therefore, the disciplinary actions instituted by them were "legal nullities." Brief of Appellant at 17.[2]

---

**2.** Turner has also argued that he is properly challenging the illegality of Gann and Guest's actions with a direct, not collateral, attack. The City Defendants have chosen not to address these arguments "because this Court need not resolve them in order to resolve the case." Brief of Appellees at 6. We appreciate the City Defendants' attempts at brevity; however, we are in the best position to determine what issues need to be discussed in order to resolve a given case. It is certainly an appellee's prerogative to choose not to address any or all of an appellant's arguments, but we would simply note that an appellee does so at his own peril. Should we decide that an issue to which the appellee has

We can find no cases which state that a police chief is an "officer" within the specific context of Article 6, section 6. However, there are cases which hold that a police chief is a "public officer" in other contexts. In *State v. Carey*, 241 Ind. 692, 175 N.E.2d 354 (1961), our supreme court considered a statute which stated:

> In case the mayor or other officer of any city or town shall wilfully or corruptly be guilty of oppression, malconduct or misfeasance in the discharge of the duties of his office, he shall be liable to be prosecuted by indictment or affidavit in any court of competent jurisdiction, and, on conviction, shall be fined not exceeding one thousand dollars [$1,000], and the court in which such conviction shall be had shall enter an order removing him from office.

§ 48–1304, Burns 1950 Repl. (repealed and recodified with similar language at Ind. Code § 35–50–5–1.1). The issue was whether Carey, the chief of police for the city of Muncie, was an "officer" within the terms of the foregoing statute and therefore subject to its penal provisions. The court noted the acts of the legislature and prior court decisions which had consistently asserted that the chief of police is an officer of the municipality, and which had also distinguished between the chief of police and other members of the police department. Most notably, the court stated that the act under which Carey was appointed as chief of police provided that "the mayor shall appoint a city controller, a city civil engineer, a city attorney, a chief of the fire department, a chief of police, and *[all] other officers* ...." § 48–1215, Burns 1950 Repl. (repealed and recodified at Ind.Code § 36–4–9–6) (emphasis added). Ultimately, the court determined that "the chief of police, who is appointed by the mayor and may be removed by him at his pleasure, is a public officer, in that he is the head of a department of government, vested with the sovereign authority of the state and over which he has full responsibility. His position possesses all the criteria of a public official ...." *Carey*, 175 N.E.2d at 357. Thus, Carey was subject to indictment pursuant to the above-quoted statute.

We agree with Turner that the chief of police is an "officer" within the meaning of Article 6, section 6 of the Indiana Constitution. Much as the court in *Carey* decided, the chief of police is among those "officers" appointed by the mayor, supervises and controls the city police department and its members, and exercises certain executive and judicial functions. *See* Ind.Code § 36–8–3–4(c) (only suspension in excess of five days without pay, demotion, or dismissal requires a hearing before the safety board). The parties do not dispute that neither Chief Gann nor Chief Guest were residents of the City at the time they imposed discipline upon Turner.

■ However, notwithstanding the determination that chiefs of police are subject to constitutional residency requirements, Turner "concedes that the purported chiefs of police named in this suit were or are *de facto* officers." Brief of Appellant at 19. A *de facto* officer is one who claims the office, is in possession of it, and performs its duties under color of election or appointment. *Carty v. State*, 421 N.E.2d 1151, 1154 (Ind.Ct.App.1981). If the election or appointment were valid, *de facto* officers would be *de jure* officers, and thus, for the protection of the public who deals with the *de facto* officer, his acts are as valid as the acts of a *de jure* officer. *Id.* *See also Fruit v. Metropolitan Sch. Dist. of Winchester–White River Township*, 241 Ind. 621, 172 N.E.2d 864, 866 (1961).

The appointment of both Chief Gann and Chief Guest seemed to have been

not responded is necessary for resolution of a case, the failure to respond would lessen the appellant's burden of showing error. *See Santana v. Santana*, 708 N.E.2d 886, 887 (Ind.Ct.App.1999) ("When the appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee. Applying a less stringent standard of review, we may reverse the trial court if the appellant can establish prima facie error.").

made in good faith, and the chiefs properly inducted into office. As there is no statutory requirement that chiefs of police reside in their respective towns, and as this case presents the first time a court has explicitly applied the residency requirement of Article 6, section 6 to chiefs of police,[3] there is no showing of an intentional disregard of the law. In the case at bar, there is no indication that Turner was harmed or deprived in any way as a result of Gann and Guest's performance of their duties. As *de facto* officers, Gann and Guest were empowered to act as chief of police, and their official acts, including the discipline against Turner, were valid.

### III. Nondelegation

Turner contends that the trial court erred in finding that the City–FOP Agreement does not violate the nondelegation doctrine. Turner claims injury in that the FOP's improper exercise of legislative discretion affects the terms of his employment.

### A. Doctrine of Nondelegation

The non-delegation doctrine in Indiana prohibits the legislature from delegating its power to make law. *Clemons v. State*, 162 Ind.App. 50, 317 N.E.2d 859, 861 (1974), *cert. denied*, 423 U.S. 859, 96 S.Ct. 113, 46 L.Ed.2d 86 (1975). In this case, it is the City which has allegedly delegated its power to amend the merit system ordinance in part to the FOP. Article XXX of the City–FOP Agreement provides:

> The City of Evansville agrees not to make any changes in the existing merit ordinance of the Evansville Police Department unless a committee with equal representation from the [FOP] and the City of Evansville makes a recommendation by majority vote for such changes in the ordinance.

> The Committee will consist of three (3) members appointed by the Mayor of the City of Evansville and three (3) members appointed by the President of the [FOP]. The parties hereby agree that any changes in the recommendation of the committee can only be implemented as an ordinance with the consent of said committee.

R. 37. Turner contends that this provision of the City–FOP Agreement, requiring a majority vote from an equally divided committee to recommend a change in the ordinance, improperly delegates the City's legislative power to the FOP, because at least one FOP member of the committee must vote for such a recommendation.

### B. City–FOP Agreement

We agree, as a general proposition, with the law cited by Turner in support of his nondelegation argument. However, we do not believe it applicable to this situation. The City–FOP Agreement contemplates that a committee of six members make recommendations to the legislative body regarding appropriate changes to the existing merit system ordinance. The committee has no power, in and of itself, to effect such changes. The City, by its Common Council, retains the exclusive right and obligation to implement such changes pursuant to the legislative process. The City–FOP Agreement does not violate the principle of nondelegation.

### IV. Summary Judgment

As we have determined that the law is against Turner as to each of the points of error he has alleged, we hold that the trial court's grant of summary judgment in favor of the City Defendants and against Turner was proper. Accordingly, we affirm the judgment of the trial court. The

---

**3.** We note that this court has recently handed down a companion case, *Sullivan v. City of Evansville*, 728 N.E.2d 182 (Ind.Ct.App.2000), in which Chief Gann's authority to discipline Sullivan was challenged due to his failure to reside within the City limits as required by Article 6, section 6. However, because Sullivan had a hearing before the Merit Commission and failed to challenge Chief Gann's residency during that hearing, we held that this issue was waived on appeal. Op. at 191.

stayed disciplinary proceedings against Turner may proceed.

*Conclusion*

The City's current merit system ordinance is in compliance with Indiana law and the Merit Commission is properly constituted and may determine Turner's appeal of his discipline. The City Chief of Police is subject to the constitutional residency requirement; however, the acts of Chiefs Gann and Guest, including discipline against Turner, are valid as the acts of a *de facto* officer. Finally, the City–FOP Agreement does not violate the doctrine of nondelegation. Accordingly, summary judgment for the City Defendants is affirmed.

Affirmed.

BROOK, J., and NAJAM, J., concur.