Bradley A. TURNER, Appellant
(Plaintiff Below),

v.

CITY OF EVANSVILLE, et al.,
Appellees (Defendants
Below).

No. 82S05–0008–CV–479.

Supreme Court of Indiana.

Jan. 18, 2001.

Jeffrey W. Waggoner, Indianapolis, Indiana, Attorney for Appellant.

Michael D. Marine, Bradley L. Williams, Indianapolis, Indiana, Attorneys for Appellees.

## ON PETITION FOR TRANSFER

SHEPARD, Chief Justice.

The Chief of the Evansville Police Department imposed discipline on an officer, who appealed to the City's Police Merit Commission. The officer then sued the Commission, the Chief, and others, seeking to prevent a hearing on the merits of his appeal and challenging the Chief's right to hold office, the lawfulness of the Commission's existence and the validity of an agreement between the City and the Fraternal Order of Police. We hold that these matters may be the subject of review sought after any final decision of the Commission but may not be pursued collaterally through this lawsuit.

### Facts and Procedural History

Appellant Bradley A. Turner began his service with the Evansville Police Department in January 1995, hired from a list created by the Evansville Police Merit Commission. The current dispute began when Chief of Police Arthur A. Gann issued Turner written reprimands on two occasions in 1997, once for failing to use reasonable care in the use of a motor vehicle, and again for failing to follow the police department's standard operating procedures.

Chief Gann suspended Turner in early August 1998 for twenty-one days, with pay, for giving false information in a statement to Internal Affairs and in testimony to the Merit Commission regarding a disciplinary action against another officer. Turner filed a notice of appeal with the Merit Commission regarding this suspension.

When Marvin D. Guest replaced Gann as Chief of Police in late August 1998, Chief Guest amended Turner's suspension to be served without pay. Turner appealed this amended suspension to the Merit Commission. In late 1998, Guest suspended Turner two more times, first for failing to follow standard operating procedures and "repeated violations," and later for being absent from roll call and his assigned posts at the time prescribed and for "repeated violations." (R. at 127–28, 130–31.) Turner filed a notice of appeal for each of these suspensions.

All three of Turner's appeals remain pending before the Merit Commission. Before they could be heard, Turner filed a lawsuit challenging the past and present Chiefs' right to office, the ordinance establishing the Merit Commission and an agreement between the City and the Fraternal Order of Police. He asked the court to enjoin the Commission from conducting a disciplinary hearing while his lawsuit proceeded. The court issued such an order, and it still pends.

The trial court granted summary judgment for the defendants. The Court of Appeals affirmed. Among other things, it held the Evansville Police Merit Commission was properly constituted under the relevant statutes and that the Chief of Police was obliged by Article 6, section 6 of the Indiana Constitution to live inside the city limits. *Turner v. City of Evansville,* 729 N.E.2d 149 (Ind.Ct.App.2000). We grant transfer and vacate the decision of the Court of Appeals.

### Subject Matter Jurisdiction

It has long been Indiana law that a claimant with an available administrative remedy must pursue that remedy before being allowed access to the courts. *City of East Chicago v. Sinclair Refining Co.,* 232 Ind. 295, 111 N.E.2d 459 (1953). If a party fails to exhaust administrative remedies, the trial court lacks subject matter

jurisdiction. *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217 (Ind. 2000).[1]

We recently re-emphasized the value of completing administrative proceedings before resorting to judicial review in *State Bd. Of Tax Com'rs v. Montgomery*, 730 N.E.2d 680, 684 (Ind.2000)(quoting *State v. Sproles*, 672 N.E.2d 1353, 1358 (Ind.1996)),

> The reasons for requiring a party to seek administrative remedies are well established. Premature litigation may be avoided, an adequate record for judicial review may be compiled, and agencies retain the opportunity and autonomy to correct their own errors. Even if the ground of complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion may still be required because 'administrative action may resolve the case on other grounds without confronting broader legal issues.'

(Citation omitted.)

■ Turner appropriately filed a notice of appeal of each of his suspensions with the Merit Commission, which would go forward but for the restraining order obtained by Turner. This right of appeal from discipline by a Chief is common in Indiana's various statutory schemes. *See, e.g.*, Ind.Code Ann. § 36–8–3.5–19(b) (West 1997). A decision by the commission is also subject to judicial review. Ind.Code Ann. § 36–8–3.5–18 (West 1997). Turner's challenges to the Chief's authority, and the Commission's own compliance with relevant statutes may be challenged before the body and subsequently raised in court through the process of judicial review. *See, e.g., City of Marion v. Antrobus*, 448 N.E.2d 325 (Ind.Ct.App.1983) (board whose composition was challenged at officer's disciplinary hearing later held on judicial review to be unlawfully constituted, officer's suspension reversed). To preserve these issues for judicial review, Turner must first present them at the administrative hearing. *See Sullivan v. City of Evansville*, 728 N.E.2d 182 (Ind.Ct.App. 2000) (plaintiff waived challenge to authority of police chief by failing to make a timely objection at the hearing).

■ Turner was required to pursue his administrative remedies and may not avoid doing so through this collateral action.[2] Consequently, the trial court lacked subject matter jurisdiction to address the merits of Turner's amended complaint.

### Conclusion

Having heard the City's motions, the trial court granted summary judgment and also ordered dismissal. It was the latter action that was appropriate. We affirm the dismissal and direct the court to dissolve the injunction preventing the Merit Commission from hearing Turner's appeal.

DICKSON, SULLIVAN, BOEHM, RUCKER, JJ., concur.

BOEHM, J., concurs with opinion, in which DICKSON and RUCKER, JJ., join.

BOEHM, Justice, concurring.

I join in the opinion of the Court. Because that opinion adequately disposes of this case, I would normally be content to leave resolution of the issue presented by the merits of this case for another day. However, the Court of Appeals addressed an important question in holding that the Indiana Constitution requires that the police chief reside within the Evansville city limits. I agree that Turner has no standing to raise that issue in this lawsuit.

---

1. A party may gain judicial review without satisfying this prerequisite in limited circumstances, such as where pursuit of administrative remedies would be futile, or where strict compliance would cause irreparable harm, or where the applicable statute is alleged to be void on its face. *Bellamy v. Gillis*, 722 N.E.2d 905, 909 (Ind.Ct.App.2000). None of these seem to apply here.

2. A proper challenge to an office is made by filing a quo warranto action. *Hovanec v. Diaz*, 272 Ind. 342, 397 N.E.2d 1249, 1250 (1979).

Nevertheless, for better or worse, the Court of Appeals has resolved the issue in a published opinion that I assume affects a number of public safety officials and perhaps others serving local governmental units across Indiana. Rather than leave these public servants in doubt as to the need to resign their positions or relocate their families, I would address the question of who is an "officer" within the meaning of Article VI, Section 6 of the Indiana Constitution. It is my view that the Evansville Chief of Police is not subject to the residency requirement in Article VI, Section 6.

The origin of the residency provision can be traced to Article XI, Section 6 of the Indiana Constitution of 1816:

> All officers shall reside within the state; and all District, County, or Town officers, within their respective Districts, Counties, or towns (the trustees of the town of Clarkesville [sic] excepted) and shall keep their respective offices, at such places therein, as may be directed by law; and all Militia officers shall reside within the bounds of the Division, Brigade, Regiment, Battalion or company to which they may severally belong.

The proceedings of the 1850 constitutional convention shed little light on the purpose of the original provision or the modified version we now find in Article VI, Section 6. The 1850 debate was concerned solely with the exception for the trustees of the town of Clarksville. That exception did not survive the constitutional convention.[3] The constitutions of 1816 and 1851 were written in an era of vastly simpler government, when transportation and communications were extremely difficult.[4] In 1815, Indiana's population was fewer than 64,000 women, men, and children living in small communities dotting a 36,000 square mile expanse.

It seems to me that the "officers" contemplated by this constitutional provision are those identified in the Indiana Constitution itself as "officers" and those county, township, and town officials who have been identified by statute as those who, in the terms of Article VI, Section 3, are elected or appointed "by law" to perform similar functions. I assume no one would argue that every statutorily provided public em-

---

3. Clarksville has a unique origin. It was created by the state of Virginia in 1783 out of lands granted to the "Illinois regiment." The Virginia legislature set aside one thousand acres for the creation of the town of Clarksville and appointed ten men, including George Rogers Clark, as the board of commissioners of the town. It was their duty to survey and distribute the resulting parcels. The 1783 act also gave the board of commissioners the unusual ability to choose its own successors. The propriety of the entire arrangement was challenged in a dispute that reached the United States Supreme Court in 1832. *Hughes v. Trustees of Clarksville*, 31 U.S. (6 Pet.) 369, 8 L.Ed. 430 (1832). An opinion authored by Chief Justice Marshall upheld the strange composition of the Clarksville town trustees. I have been unable to find any explanation of the 1816 Indiana Constitution's exemption of the trustees of Clarksville from the residency requirement of Article XI, Section 6. In any event, by 1850, constitutional delegates had lost any sympathy for the trustees of one town—no matter how unique its origins—who chose to live in another. 1 *Report of the Debate and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana* 930–31 (Indiana Historical Collections Reprint, 1935).

4. William Huff, a delegate to the constitutional convention of 1850, reminded the convention of the difficulties of travel. He first pointed out the scarcity of good roads and bridges, and continued:

> The two counties [Spencer and Perry] front about one hundred miles on the Ohio river, and there are some five or six considerable sized streams emptying into the Ohio ... which makes it very inconvenient for the citizens ... to get to and from their county seats. In fact, it is sometimes almost impossible without going to the river and boarding a boat; or, if they cannot get a boat without waiting too long, they sometimes throw a couple of logs in and fasten them together and board them. This kind of conveyance will do very well if they wish to go down stream, but it will not do so well for traveling up stream, and consequently they have to depend entirely on a boat; and if no boat comes in time, they cannot go at all. *Debates* at 932.

ployee is an "officer" for these purposes. If that is correct, some rather bright line is required here to permit these public servants and their employers to go about their business with confidence that there will not be constant skirmishing over eligibility to hold municipal and county jobs.

Since 1863, a number of appellate decisions have struggled to determine which local officials are "officers" within the meaning of Article VI, Section 6. Everyone seems to agree that the term, at a minimum, embraces the "officers" identified as such in the constitution itself. These are the county clerk, auditor, recorder, treasurer, sheriff, coroner, and surveyor. In addition, the senior legislative components of local government are required to live in their jurisdictions. All of the foregoing are elected to their posts. Some decisions have held other public servants to be constitutional officers. *Relender v. State ex rel. Utz,* 149 Ind. 283, 288, 49 N.E. 30, 32 (1898) ("Members of a board of commissioners are certainly county officers...."); *Yonkey v. State ex rel. Cornelison,* 27 Ind. 236, 240–41 (1866) (county recorder is "officer"); *State ex rel. Cornwall v. Allen,* 21 Ind. 516, 521 (1863) (county auditor is "officer"); *City of Marion v. Antrobus,* 448 N.E.2d 325, 330 (Ind.Ct.App.1983) (members of the city Board of Public Works and Safety are "officers"); *Willsey v. Newlon,* 161 Ind.App. 332, 334, 316 N.E.2d 390, 392 (1974) (township justice of peace is an "officer").

In 1980, the General Assembly imposed residency requirements on twenty county, township, and town positions that were specifically identified as subject to Article VI, Section 6.[5] This list did not include any law enforcement personnel beyond

the constitutionally created office of county sheriff. In addition to the list tied specifically to Article VI, Section 6, a variety of statutes impose other residency requirements. Ind.Code § 33–14–1–1.5 (Supp.2000) (prosecuting attorney must reside in same judicial circuit); *id.* § 36–4–9–11 (1998) (corporation counsel of city with population greater than 6,000 must live within county); *id.* § 36–7–4–216 (citizen members of plan commission must be residents of the jurisdictional area of the commission); *id.* § 36–7–14–7 (Supp.2000) (redevelopment commissioner must be resident of unit that he serves); *id.* § 36–8–3.5–6 (1998) (member of merit commission must have been resident of local unit for three years before appointment); *id.* § 36–8–4–2 (Supp.2000) (members of police and fire departments must live within county where city, town, or township is located, or in a contiguous county).

Although this Court is certainly not bound by the legislature's interpretation of the term "officer" as used in Article VI, Section 6, it seems to me that the General Assembly's conclusions are correct. The top executive individuals and bodies of counties, towns, and townships are included, as are the analogs to the constitutionally created offices. The elected sheriff, who reports to no one, is the sole law enforcement official on the list. In contrast, a city chief of police normally is accountable to a mayor, a board of safety or merit commission, or both. Here, the police chief's control over the police department is not absolute; it is tempered by the mayor's oversight and the Evansville Merit Commission's exclusive authority over hiring, firing, and disciplinary

---

5. Those positions are: city court judge (Ind. Code § 33–10.1–3–2 (1998)); member of the county "executive" (*id.* § 36–2–2–5); member of the county "fiscal body" (*id.* § 36–2–3–5); county auditor (*id.* § 36–2–9–2); county treasurer (*id.* § 36–2–10–2); county recorder (*id.* § 36–2–11–2); county surveyor (*id.* § 36–2–12–2); county sheriff (*id.* § 36–2–13–2); county coroner (*id.* § 36–2–14–2); county assessor (*id.* § 36–2–15–2); executive of UNI- GOV (*id.* § 36–3–3–4); city-county council of UNIGOV (*id.* § 36–3–4–2); mayor (*id.* § 36–4–5–2); common council/city legislative body (*id.* § 36–4–6–2); city clerk (*id.* § 36–4–10–3); town legislative body (*id.* § 36–5–2–6); town clerk-treasurer (*id.* § 36–5–6–3); township trustee (*id.* § 36–6–4–2); township assessor (*id.* § 36–6–5–1 (Supp.2000)); and township legislative body (*id.* § 36–6–6–3 (1998)).

matters. Evansville, Ind., Code § 3.30.37.509(B) & 30.37.505 to .528.

I agree that various public servants, including chiefs of police, may be "officers" within the meaning of some statutes. However, this is purely a matter of legislative construction. Thus, I have no trouble agreeing that the legislature intended to include the chief of police in an anti-corruption prohibition applicable to local "officers." *State v. Carey,* 241 Ind. 692, 175 N.E.2d 354 (1961). But *Carey* seems to shed little light on the use of the same term in the 150 year old residency requirement of the state constitution, which presumably had in mind the goals of political accountability and familiarity with local issues. Moreover, the word "officer" is used in various statutes to describe a number of public servants whom no one would identify as constitutional officers. For example, although the code refers to "law enforcement officers," I do not believe that anyone would suggest that every policeman or deputy throughout the state of Indiana is subject to Article VI, Section 6. Secondly, the test sometimes cited for identifying an "officer"—one who exercises "sovereign authority"—clearly applies to law enforcement and regulatory officials.

In sum, practical considerations of geography and limited communication undoubtedly influenced the constitutional residency requirement at its origin. These are no longer as significant, but the assumed goals of political accountability and familiarity with local issues remain. In my view, neither goal is sufficiently served by extension of Article VI, Section 6 to an appointed city chief of police who is himself accountable to a layer of constitutional officers.

DICKSON and RUCKER, JJ., concur.