ATTORNEYS FOR APPELLANT
Virginia Wright Caudill
Robert W. Markette, Jr.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Steve Carter
Attorney General of Indiana

David L. Steiner
Laureanne Nordstrom
Deputies Attorney General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
Peter D. Keisler
Assistant Attorney General of the
United States

Susan W. Brooks
United States Attorney

James P. Hanlon
Assistant United States Attorney

Michael S. Raab
Mark S. Davies
Attorneys, Appellate Staff, Department
of Justice

# In the
# Indiana Supreme Court

_____

No. 18S02-0405-CV-198

ADVANTAGE HOME HEALTH CARE, INC.,

*Appellant (Plaintiff below),*

v.

INDIANA STATE DEPARTMENT OF HEALTH
AND INDIANA STATE HEALTH COMMISSIONER,

*Appellees (Defendants below).*

_____

Appeal from the Delaware Circuit Court, No. 18C01-0109-CP-547
The Honorable Marianne Vorhees, Master Commissioner
The Honorable Wayne Lennington, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 18A02-0211-CV-928.

_____

**June 22, 2005**

**Shepard, Chief Justice.**

Dissatisfied with reports about inspections the Indiana Department of Health conducted of its facilities, appellant Advantage Home Health Care filed for declaratory judgment. It sought to establish that the inspection reports and accompanying requests for correction of deficiencies constituted orders appealable under the Administrative Orders and Procedures Act. Because Advantage did not exhaust the administrative procedures available to it, the trial court properly granted judgment to the Department.

**Facts and Procedural History**

Advantage Home Health Care, Inc., is a home health agency that provides patients with both skilled and unskilled in-home health care services. The Indiana State Department of Health licenses Advantage and other providers, assuring compliance with various state statutes and regulations concerning the operation of home health agencies. Advantage is also a certified provider under the federal Medicare and Medicaid programs and must comply with federal statues and regulations as well as with certain standards known as "conditions of participation" in order to receive federal funds.

To maintain its state license and federal certification, Advantage is subject to inspections commonly referred to as "surveys." The Department conducts these surveys on a routine annual basis, or if a complaint is received concerning the home health agency. Even though only a single inspection usually occurs, the Department acts in two distinct capacities when it conducts surveys: 1) as a state licensing and regulatory agency; and 2) as an agent of the federal Centers of Medicare and Medicaid Services.

Once the inspection is complete, the investigator produces two survey reports, one report addressing compliance with state law and the other compliance with federal law. The two reports each set forth various "findings" that are essentially statements made by the investigator as a result of her inspection. The "findings" are based on information collected during the inspection from interviews, the review of records, and observations of the treatment provided by the agency.

Completed reports are recorded on a standard form called a "Statement of Deficiencies and Plan of Correction," with one form referring to state law and one to federal law. These are sent from the field to the Department's main office. The Department then forwards the statements of deficiency to the home health agency. It also sends an accompanying letter that summarizes the survey results, and requests that the agency submit a "plan of correction" to detail how it will address the identified violations. The letter also informs the home health agency of the opportunity to contest the deficiencies listed by invoking an Internal Dispute Resolution ("IDR") process.

At the time the facts relevant to this case arose, the Department's IDR process afforded an agency both a paper review and a "face-to-face" review of the statement of deficiencies. (Appellant's App. at 750.) In the paper review, the IDR panel reviews the statement of deficiencies and any documentation provided by the agency and can remove, modify or leave unchanged any of the deficiencies identified. If the agency is dissatisfied with the results of the paper review, it can request a face-to-face review in which the agency can speak directly with the IDR panel.

In April 2001, the Department completed both state and federal surveys of Advantage after receiving a complaint that a nurse employed by Advantage struck a special needs child in the mouth. The surveys identified three violations of Indiana's home health rules and about twenty-six violations of federal regulations. On May 23, 2001, the Department sent a letter, and federal and state statements of deficiency to Advantage. The letter, like the first page of the federal statement of deficiency, indicated that Advantage was out of compliance with two *federal* conditions of participation and informed Advantage that "in order to interrupt this determination

3

of noncompliance process a Credible Allegation of Compliance must be submitted to this office for each condition cited and a plan of correction for each standard level deficiency cited." (Appellant's App. at 502.)  The letter briefly mentioned the existence of state deficiencies.[1]  It also informed Advantage of its ability to "contest deficiencies contained in the Statement of Deficiencies" through the IDR process.  (Appellant's App. at 503.)

Advantage filed a plan of correction and on June 4, 2001, it requested administrative review of the surveys under the Administrative Orders and Procedures Act ("AOPA"), Ind. Code Ann. §§ 4-21.5-1-1 to -7-9 (West 2002).  On June 8, 2001, the Department responded by letter, informing Advantage that surveys did not constitute orders and were not subject to review under AOPA.  It told Advantage of its opportunity to challenge that decision through administrative review, though Advantage never sought review of the June 8 decision. (Appellees' Br. at 11-12.)

Instead of seeking administrative review of the Department's decision that surveys did not constitute orders, Advantage requested a paper IDR for both survey reports on August 23, 2001.  Following that review, the Department issued revised state and federal surveys on October 23, 2001.  On October 26, 2001, Advantage requested a face-to-face IDR of the federal survey, and in response to that request, a further revised federal survey was issued on January 17, 2002. (Appellant's App. at 750.)

On September 25, 2001, Advantage filed a complaint for declaratory judgment seeking to reverse the Department's position that a survey was not an order subject to review under AOPA. The trial court granted summary judgment in favor of the Department, concluding that the surveys were exempted from AOPA pursuant to Ind. Code § 4-21.5-2-5(9), (10).  It also held that surveys did not meet AOPA's definition of "order" because they simply documented the findings of investigations.

Advantage appealed.  The Court of Appeals reversed, holding that the statement of deficiencies constituted an order obliging Advantage to file a plan of correction "within a certain

[1] The letter's reference to the state deficiencies is a passing mention in a single sentence:  "The survey report reveals that, in addition to state deficiencies, there are federal deficiencies that are preventing your facility from being in compliance with the requirements [established for Medicare/Medicaid certification]." (Appellant's App. at 502.)

4

period of time and in a certain required manner." <u>Advantage Home Health Care, Inc. v. Indiana State Dept. of Health</u>, 792 N.E.2d 914, 917 (Ind. Ct. App. 2003) <u>vacated</u>. It also held that the statement of deficiencies did not fall under the list of exempt agency actions. <u>Id</u>. at 918. We granted transfer.

## I. The Federal Survey

The primary issue joined by the parties is whether the state and federal surveys are subject to review under AOPA. (Appellant's Br. at 11-22; Appellees' Br. at 15-19.) Advantage, in the alternative, argues that even if AOPA does not apply to the statements of deficiency, their due process rights entitle them to an independent review of the statements. The Department also urges that it was entitled to judgment because Advantage did not pursue its administrative remedies.

We begin by addressing the status of the federal surveys. Appearing as Amicus Curiae, the United States has expressed grave concern that the opinion of the Court of Appeals could be read as subjecting the survey reports conducted by the Department on behalf of the federal government to state administrative review. Of course, the Court of Appeals opinion was vacated at the time we granted transfer. <u>See</u> Ind. Appellate Rule 58(A).

At oral argument before this Court, however, Advantage declared that it does not seek review of the federal survey under AOPA, but seeks review of the survey produced by the Department acting in its role as the state licensing agency.[2] In light of that indication, we need only consider the application of AOPA to the survey conducted by the Department as a state licensing board.

_____

[2] The oral argument for this case, and all other oral arguments before this Court since 2001, may be found at http://www.indianacourts.org/apps/webcasts. Oral arguments before the Court are broadcast live over the internet, and are also stored in a searchable online archive.

## II. Exhaustion of Administrative Remedies

The Department sought judgment in the trial court on grounds that Advantage failed to exhaust its administrative remedies prior to seeking relief from the courts. (Appellant's App. at 186-187.)

The basis of the Department's argument is that the letter sent on June 8, 2001, informing Advantage that its request for an administrative hearing was denied because surveys did not constitute orders under AOPA, was itself an order and therefore subject to the review procedures outlined in Ind. Code Ann. § 4-21.5-3-7 (West 2002). (Appellees' Br. at 11-14.) It contends that Advantage's failure to invoke these processes should bar Advantage from seeking relief in the courts.

It has long been Indiana law that a claimant with an available administrative remedy must pursue that remedy before being allowed access to the judicial power. City of East Chicago v. Sinclair Refining Co., 232 Ind. 295, 306, 111 N.E.2d 459, 464 (1953). Quite beside this general jurisprudential rule of administrative law, the legislature has codified this principle. See Ind. Code Ann. § 4-21.5-5-4 (West 2002).

We have on several occasions articulated the reasoning behind this policy of requiring exhaustion of administrative remedies before review by courts is permitted. As we noted in Turner v. City of Evansville:

> Premature litigation may be avoided, an adequate record for judicial review may be compiled, and agencies retain the opportunity and autonomy to correct their own errors. Even if the ground of complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion may still be required because 'administrative action may resolve the case on other grounds without confronting broader legal issues.'

740 N.E.2d 860, 862 (Ind. 2001) (quoting State Bd. of Tax Comm'rs v. Montgomery, 730 N.E.2d 680, 684 (Ind. 2000)). Justice Sullivan noted several additional benefits of this approach:

6

> The exhaustion requirement serves to avoid collateral, dilatory action of the likes of the instant action and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with the opportunity 'to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for review.'

Austin Lakes Joint Venture v. Avon Util., Inc., 648 N.E.2d 641, 644 (Ind. 1995) (quoting Uniroyal, Inc. v. Marshal, 579 F.2d 1060, 1064 (7th Cir. 1978)) (alteration in original).[3]  Where such an administrative remedy is readily available, filing a declaratory judgment action is not a suitable alternative.  See Turner, 740 N.E.2d at 862.

The essence of Advantage's claim is that the Department made a "mistake" in determining that the survey it issued did not constitute an order under AOPA.  As noted above, one of the primary reasons to require exhaustion of remedies is to provide the agency an opportunity to correct its own mistakes without wasting resources in a protracted series of collateral court proceedings.

That is exactly what has occurred here.  Advantage had every opportunity to pursue administrative review of the June 8th determination, but it instead chose to seek judicial action on exactly the same question rather than permitting more senior officials in the Department to correct the mistake.

That is assuming the Department's determination of June 8th is mistaken at all.   The term "order," in the context of administrative law, carries with it a sense of formality and finality.  In essence, the term order "implies a formal agency mandate issued at the culmination of some regular agency proceeding, and it includes any rule, regulation, direction, requirement, standard, determination or decision of the agency . . . ." 73A C.J.S. Public Administrative Law and Procedure § 279 (2004).

_____

[3] Many of these considerations inform our view that "the exhaustion requirement . . . should not be dispensed with lightly on grounds of 'futility.'"  M-Plan, Inc. v. Indiana Comprehensive Health Ins. Ass'n, 809 N.E.2d 834, 839 (Ind. 2004) (quoting Town Council of New Harmony v. Parker, 726 N.E.2d 1217, 1224 (Ind. 2000)) (internal citations omitted).

In this case, statements of deficiencies represent something rather different from this concept of "order." The Department's statement of deficiency represents little more than the initial summation of its investigation. The statements certainly do reach some conclusions in the sense that they represent the end product of the investigation, but they produce nothing that approaches a "formal agency mandate."

The statement of deficiency in this instance reported findings that the Department *might* use as part of a separate and distinct agency action should it pursue sanctions against Advantage for non-compliance. This, of course, is the very function of an administrative investigation. An investigation is "an informal proceeding to obtain information to govern future action, and is not a proceeding in which action is taken against anyone." 73 C.J.S. Public Administrative Law and Procedure § 145 (2004). Moreover, the "purpose of an administrative investigation is to discover and procure evidence, and not to prove a pending charge or complaint, and thus, its function is distinct from an adjudication." Id. This is precisely what the statements of deficiencies issued by the Department actually do. They do not seek to adjudicate compliance or non-compliance, but rather serve as a starting point from which the Department may judge the compliance of Advantage, or any home health agency, and determine if sanctions are appropriate.

Advantage insists that because the statement of deficiency requires the submission of a plan of correction, it fits within AOPA's definition of order as "1) an administrative agency action of; 2) particular applicability; 3) that establishes definitely; 4) the duty to submit a plan of correction." (Appellant's Br. at 14) (echoing Ind. Code Ann. § 4-21.5-1-9 (West 2002)). However, the "duty" to submit a plan of correction is, at best, modest. The scope of the duty to file a plan of correction, as conceded by Advantage at oral argument, requires nothing more than the filing of a statement asserting that the home health agency believes itself to be in compliance with the applicable state laws and regulations. To embrace the notion that our legislature intended routine judicial oversight of minimal agency requirements, one would have to imagine that it desires more muscular judicial activity than seems likely.

The D.C. Circuit, perhaps the nation's leading situs of administrative law disputes, has concluded that similar agency action is not subject to judicial review under the federal

8

Administrative Procedures Act. In <u>Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'</u>, it held that the Consumer Product Safety Commission ("CPSC") did not take a final agency action, defined as an action which "imposes an obligation, denies a right, or fixes some legal relationship,"[4] when it informed Reliable of its intent to make a preliminary determination that sprinkler heads manufactured by Reliable constituted a "substantial product hazard." 324 F.3d 726, 729, 731 (D.C. Cir. 2003). The court reached this conclusion because the CPSC's actions "amount[ed] to an investigation of appellant's sprinkler heads, a statement of the agency's intention to make a preliminary determination . . . and a request for voluntary corrective action." <u>Id</u>. at 731.

Although certainly not identical to the circumstances at bar, the facts in <u>Reliable</u> are sufficiently analogous to make the D.C. Circuit's reasoning helpful. Like Reliable, Advantage was the subject of an investigation and received a summary of that report. Similarly, the survey report was "preliminary" in the sense that the IDR process was available to Advantage and in the sense that the results of the report would still be subject to challenge if the Department ever uses the survey report as the basis for imposing sanctions against Advantage. While the request for a plan of correction certainly requires response, the system supplies so much leeway in fashioning an appropriate reply that it can barely be compared to a directive that might say, "Do this or we will fine you 'X'."

Moreover, if such a minimal response would be enough to require review it would subject agencies to judicial oversight of relatively simple communications. While the legislature may have intended AOPA as a check on the potential abuses of administrative agencies, the intent could not have been to so hamper the agencies in carrying out their responsibilities that AOPA becomes a shield for regulated entities to commit their own abuses.

### III. Conclusion

---

[4] Compare with AOPA's definition of "order" found at Ind. Code Ann. § 4-21.5-1-9 (West 2002), which provides that "'Order' means an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons."
Although not identical, the federal definition of "final agency action" and AOPA's definition of "order" each indicate not only a sense of finality, but also an imposition of some meaningful duty on the affected party.

Because Advantage failed to exhaust available administrative remedies by not seeking administrative review of the Department's June 8th letter, the trial court correctly granted judgment to the Department. We affirm.

**Dickson, Sullivan, Boehm, Rucker, JJ., concur.**