


FILED

Jul 24 2025, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

Steven M. Shockley,

*Appellant-Plaintiff*

v.

Indiana Real Estate Appraiser Licensure
and Certification Board,

*Appellee-Defendant*

---

July 24, 2025

Court of Appeals Case No.
24A-PL-2064

Appeal from the Marion Superior Court

The Honorable David A. Shaheed, Judge Pro Tempore

Trial Court Cause No.
49D04-2401-PL-3115

---

**Opinion by Judge Weissmann**
Judges May and Scheele concur.

**Weissmann, Judge.**

[1]     Appraiser Steven Shockley stands accused of professional incompetence and of violating professional standards in connection with three property appraisals he prepared on behalf of landowners subject to eminent domain proceedings for the Interstate 69 road project. Before conducting Shockley's disciplinary hearing, the Indiana Real Estate Appraiser Licensure and Certification Board (Board) rejected Shockley's efforts to disqualify two of its five members and to exclude the State's expert witness. Shockley petitioned for judicial review of those pre-hearing decisions, and the trial court dismissed Shockley's petition.

[2]     Shockley appeals the dismissal, and we affirm. Indiana's Administrative Orders and Procedures Act (AOPA) generally allows judicial review only after final agency action—that is, after the petitioner's exhaustion of administrative remedies. Nonfinal agency actions are subject to judicial review only when the petitioner establishes an exception to the exhaustion requirement by showing both immediate and irreparable harm and the lack of an adequate remedy at law. The Board's interlocutory rulings on Shockley's pre-hearing motions were not final agency actions subject to immediate judicial review. In addition, Shockley did not establish he fell within the exception to the exhaustion requirement that would allow him to seek judicial review before the Board decided his licensing matter. We affirm.

## Facts

In 2022, Thomas Geibel, the Director of Real Estate for the Indiana Department of Transportation (INDOT), filed with the Office of the Attorney General of Indiana multiple consumer complaints against Shockley. The consumer complaints alleged irregularities in numerous appraisals prepared by Shockley, a licensed Certified General Appraiser and appraiser instructor in Indiana. All the appraisals were performed in connection with eminent domain cases in which INDOT was the condemning agency. Shockley had been retained by landowners to provide valuation evidence regarding just compensation for the state's taking of their land.

After investigating the consumer complaints, the Indiana Attorney General (the State) filed an Administrative Complaint related to appraisals prepared by Shockley in three condemnation cases: (1) *State of Indiana v. Jianhong Chen* (case no. 55C01-1906-PL-001147); (2) *State of Indiana v. Southwest Church of the Nazarene, Inc.* (case no. 29C01-2004-PL-3102); and (3) *State of Indiana v. Kopetsky Family, LLC* (case no. 49D11-2007-PL-024743). The Administrative Complaint alleged professional incompetence, failure to keep abreast of accepted appraisal methods, and violations of the Uniform Standards of Professional Appraisal Practice (USPAP). The Complaint further alleged that the conclusions in Shockley's opinions regarding the property's values were "incredible" and "operated to the benefit of the client" and ultimately were "unreasonable,

misleading, and unreliable." App. Vol. II, pp. 32, 40, 52, 54, 57.[1] The state agency responsible for licensing and disciplining appraisers is the five-member Board.

[5] After the Administrative Complaint was filed, the parties agreed to a settlement conference. When asked by a Board representative whether Shockley wanted a Board member present at the settlement conference, Shockley's attorney responded that he "would like to do it in person with a liaison." *Id.* at 96. The settlement conference was set for July 13, 2023.

[6] On July 7, 2023, the State sent the following email to Board member Mark Ratterman, who was selected to act as liaison, with copies to all counsel:

> The pre-hearing settlement conference for Mr. Shockley's disciplinary case is coming up next Thursday, the 13th, at 2pm. (sic).
>
> I've attached a copy of the hearing notice, which has information about the conference and also has a copy of the State's administrative complaint included. I think the administrative complaint is really the only document we can share with you as the liaison at this point, but if the matter goes to hearing, of course we would present the appraisals at issue along with our expert's reviews for the Board's consideration.

---

[1] For instance, the Complaint alleged that Shockley's appraisal in December 2019 had valued the 3.25-acre property owned by Jianhong Chen at $1.65 million before the taking and $100,000 after the taking, although Chen had purchased the property for $145,000 in March 2016 and only part of it was taken by the State. As to the Kopetsky Family property, which included approximately 70 acres of developable land, the Complaint alleged that Shockley's appraisal concluded that the value of the 16.2-acre taking was about $32 million.

> I've cc'd Mr. Shockley's attorney, John Kolas, here, along with my colleagues on the case, [Deputy Attorneys General] Chase Heller and Tim Weber, so we're all on the same page.

*Id.* at 97.

[7] Before the settlement conference could occur, Shockley accused the State of communicating *ex parte* with Ratterman through this email and contended, based on the contents of the Notice, that the State and Ratterman had agreed to a different protocol than the Notice provided. The settlement conference did not occur. In the meantime, the State designated Joseph Magdziarz as an expert witness.

[8] Shockley moved to disqualify both Ratterman and Board Chairman Wayne Johnson and to exclude Magdziarz. Shockley alleged Ratterman should be disqualified due to his activities related to the settlement conference because, by statute, a member of the Board who serves as a settlement mediator cannot later participate in the Board's decision if no settlement is reached. Shockley also sought disqualification of Johnson on the grounds that Johnson, his daughter, and their business had performed work for INDOT. Shockley's motion alleged that Johnson knew the complainant—Geibel, INDOT real estate director—because of that work and that this relationship created a conflict of interest. Finally, Shockley sought to exclude Magdziarz as an expert witness based on Magdziarz's lack of an Indiana appraiser's license or certification, which Shockley claimed was necessary to conduct appraisal reviews.

[9] After a pre-hearing conference on Shockley's motion, the Board entered its Pre-Hearing Order and Notice of Discovery Schedule (Order) that made "preliminary determinations" rejecting Shockley's request to disqualify Johnson and Ratterman and to exclude Magdziarz. *Id.* at 11. Shockley responded with a motion in which he alleged that Johnson had failed to disclose that his appraisal firm was currently under contracts with INDOT totaling $1.2 million. The motion further alleged that these contracts were drafted, approved, and signed by the State and that the State's counsel was aware of them. Shockley renewed his request for Johnson's disqualification. Then, after the names of Shockley's counsel appeared on Shockley's witness list, the State objected, noting that counsel could not appear as a witness in the proceeding in which counsel was representing Shockley.

[10] In response to these two motions, the Board ordered: (1) Shockley's counsel to remove themselves either as witnesses or as Shockley's counsel; and (2) noted that Johnson "will not recuse himself from the proceedings at this time." *Id.* at 128. This order reiterated that Johnson's firm "has performed work for [INDOT] in the past" and "does not stand to gain financially or otherwise from the outcome of these proceedings." *Id.* at 128-29. It further noted that Johnson had also performed numerous appraisals for landowners in condemnation proceedings initiated by INDOT, he had "no involvement in the condemnation project that resulted in the initiation of this pending matter," and INDOT is not a party to this proceeding. *Id.* at 129. Finally, the Board observed that Johnson was responsible by statute for determining whether he could remain a fair and

impartial arbiter and that Johnson had determined he could because he has no bias as to either party.

[11] Although the final hearing was not to occur for two more months, Shockley filed a petition for review in the Marion Superior Court. This petition sought review of the Board's preliminary rulings rejecting Shockley's requests to disqualify Johnson and Ratterman and to exclude Magdziarz's testimony as an expert witness for the State. The State moved to dismiss the petition, alleging the Board's pre-hearing orders did not qualify as final agency action that would trigger Shockley's right to judicial review. The State also claimed Shockley failed to prove that his claim met the requirements for judicial review of a nonfinal action because he failed to show that he would suffer immediate and irreparable harm and no adequate remedy at law existed.

[12] The trial court granted the State's motion to dismiss and denied Shockley's later motion to correct error. Shockley appeals.

## Discussion and Decision

[13] The sole issue before us is whether the trial court properly denied Shockley's motion to correct error challenging the dismissal of his petition for judicial review. We typically review a ruling on a motion to correct error for an abuse of discretion. *In re Adoption of K.G.B.*, 18 N.E.3d 292, 296 (Ind. Ct. App. 2014). But where, as here, the issue on appeal is purely a question of law, "we review the matter de novo." *Id.*

[14] Before we turn to our analysis, we note that Shockley contends for the first time in his appellate reply brief that the Board's disqualification decision constitutes "final agency action" to which he has a right to judicial review. This is a significant departure from the arguments made in his appellant's brief, which are all premised on the notion that the Board's decision, including that portion concerning disqualification of Johnson and Ratterman, was not a final agency action.

[15] For example, Shockley argued in his opening brief that "[he] falls within the exceptions to final agency action and exhaustion of administrative remedies" and that "[n]o final agency action or exhaustion of remedies is required on the issue of disqualification if the administrative remedy is inadequate." Appellant's Br., pp. 17, 19. At no time in his opening brief did Shockley argue that the Board's order was a final agency action.

[16] In his reply brief, however, Shockley maintains that the disqualification decisions are final agency actions. And he seemingly acknowledges this change in direction, arguing:

> A determination by the ultimate authority [here, the Board] is a final order subject to judicial review. **Notwithstanding the narrow exceptions to final agency action that Shockley falls within detailed in Appellant's prior briefing,** Shockley is entitled to judicial review by virtue of the [Board's] **final** determinations on the disqualification of Johnson and Ratterman.

Appellant's Reply Br., p. 6 (emphasis added).

A party generally waives an appellate claim raised for the first time to this Court in the party's reply brief. *See Lockerbie Glove Co. Town Home Owner's Ass'n, Inc. v. Indpls. Historic Pres. Comm'n*, 194 N.E.3d 1175, 1184 n.7 (Ind. Ct. App. 2022) (quoting *Kirchgessner v. Kirchgessner*, 103 N.E.3d 676, 682 (Ind. Ct. App. 2018)). Given Shockley's waiver, we consider only the contentions first raised in his opening brief: that the appealed order is a nonfinal agency action that falls within the narrow circumstances permitting judicial review.[2] We find that Shockley has failed to make such showing and affirm the trial court's denial of his motion to correct error.

## I.    The AOPA Requires Exhaustion of Administration Remedies

Our review necessarily focuses on the AOPA, which "establishes the exclusive means for judicial review of an agency action" absent certain specific exceptions. Ind. Code § 4-21.5-5-1. "A person may file a petition for judicial review [under the AOPA] only after exhausting all administrative remedies available within the agency whose action is being challenged and without any other agency authority to exercise administrative review." Ind. Code § 4-21.5-5-

---

[2] We also note that the facts section of Shockley's appellant's brief contains inappropriate argument and conclusions. For instance, the brief includes this statement: "Yet, after all this was disclosed, the [Board] turned a blind eye to the evident bias, prejudice, and appearance of impropriety and refused to disqualify Johnson . . . ." Appellant's Br., p. 13. We remind counsel of Indiana Appellate Rule 46(A)(6), which specifies that the Statement of Facts in an appellant's brief shall set forth the relevant facts in a narrative form and in accordance with the applicable standard of review. *See Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind. Ct. App. 2016) (ruling that a "statement of facts section [that] includes argument and conclusions . . . [is] in violation of Appellate Rule 46(A)(6)").

4(a) (Exhaustion Statute). In other words, "[a]n agency action is not final, and thus is not ripe for review, until the petitioner exhausts his administrative remedies." *In re R.L.*, 246 N.E.3d 257, 260 (Ind. 2024). Failure to exhaust administrative remedies typically waives the petitioner's right to judicial review. *Id.* (citing Ind. Code § 4-21.5-5-4(b)).

[19] We have long recognized the importance of strictly enforcing the AOPA's exhaustion requirement. Through such enforcement, "[p]remature litigation may be avoided, an adequate record for judicial review may be compiled and agencies retain the opportunity and autonomy to correct their own errors." *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010) (quoting *Turner v. City of Evansville*, 740 N.E.2d 860, 862 (Ind. 2001)). Requiring that parties complete agency proceedings before seeking judicial review also avoids "collateral, dilatory action[s]," ensures "the efficient, uninterrupted progression of administrative proceedings," and fosters "the effective application of judicial review." *Advantage Home Health Care, Inc. v. Ind. State Dep't of Health*, 829 N.E.2d 499, 503 (Ind. 2005) (quoting *Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 644 (Ind. 1995)). The exhaustion requirement also gives "the parties and the courts the benefit of [the agency's] experience and expertise." *Id.* (brackets in original).

[20] "There are narrow circumstances under the AOPA that excuse the exhaustion of administrative remedies and thus permit judicial review of a nonfinal agency

action." *In re R.L.*, 246 N.E.3d at 261.[3] The AOPA allows judicial review of a nonfinal agency action only if the person seeking such review establishes both "[i]mmediate and irreparable harm" and that "[n]o adequate remedy exists at law." Ind. Code § 4-21.5-5-2(c) (Statutory Exhaustion Exception).

[21] Shockley mostly ignores this exception. He focuses instead on what he alleges are common law exceptions to the exhaustion requirement. He claims that under these common law exceptions: (1) disqualification decisions are exempted from the exhaustion rule; and (2) exhaustion of administrative remedies is not required when the agency fails to perform a ministerial duty. In arguing these common law exceptions, Shockley relies on pre-AOPA decisions while simply assuming, without analysis or authority, that they still exist under the AOPA.

[22] For its part, the State focuses on other perceived defects in Shockley's arguments. It likewise does not explore whether these common law exceptions to the exhaustion rule still apply under the AOPA. We find that they do not.

---

[3] "'Final agency action' means: (1) the entry of an order designated as a final order [under the AOPA]; or (2) any other agency action that disposes of all issues in a proceeding for all parties after the exhaustion of all available administrative remedies concerning the action." Ind. Code § 4-21.5-5-7. The State contends, and Shockley seems to assume in his appellant's brief, that the order on appeal does not qualify as a "final agency action," given that the Board has not conducted a final hearing or issued any final decision on the disciplinary complaint. The Board's prehearing order merely denied preliminary motions and scheduled further proceedings.

## A.    The AOPA Codified the Exhaustion Requirement and Its Exceptions

[23]    The predecessor to the AOPA was the Indiana Administrative Adjudication Act (AAA), Ind. Code § 4-22-1-2 *et seq.* It was repealed by 1986 Ind. Acts, P.L. 18, § 2, effective July 1, 1987, when the AOPA took effect. Unlike the AOPA, the AAA contained no provision requiring exhaustion of administration remedies as a prerequisite to judicial review. However, courts applying the AAA routinely relied upon the longstanding common law requirement of exhaustion of administrative remedies as well as various common law exceptions to that requirement. *See, e.g.*, *Scott Cty. Fed. of Teachers v. Scott Cty. Sch. Dist. No. 2*, 496 N.E.2d 610, 613-14 (Ind. Ct. App. 1986); *New Trend Beauty School, Inc. v. Ind. St. Bd. of Beauty Culturist Exam'rs*, 518 N.E.2d 1101, 1104 (Ind. Ct. App. 1988) (noting three "extraordinary situations in which a plaintiff need not exhaust administrative remedies before turning to the court": "(1) if plaintiff's compliance with the administration procedure would be futile; (2) if the applicable administrative procedure statute is void; or (3) if the plaintiff would suffer irreparable harm if required to complete the process").

[24]    The move from the AAA to the AOPA marked a narrowing of judicial review, as well as other changes. *See In re R.L.*, 246 N.E.3d at 261 ("There are narrow circumstances under [the] AOPA that excuse the exhaustion of administrative remedies and thus permit judicial review of a nonfinal agency action."). First, the AOPA codified the previous common law requirement of exhaustion of administrative remedies. Ind. Code § 4-21.5-5-4(a) (providing that "a person

may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged").

[25] The second marked change from the AAA to the AOPA is the Statutory Exhaustion Exception. Through this provision, the legislature created a limited exception to the AOPA's Exhaustion Statute by allowing a nonfinal decision to be reviewed "only" when the decision creates "[i]mmediate and irreparable harm" and "[n]o adequate remedy exists at law." Ind. Code § 4-21.5-5-2(c). The question that Shockley's arguments necessarily implicate is whether the common law exceptions to the AAA's exhaustion requirement still exist or whether they were effectively replaced with the narrower Statutory Exhaustion Exception. Ind. Code § 4-21.5-5-2(c).

## B. The Statutory Exhaustion Exception Abrogated Common Law Exceptions to the Exhaustion of Administrative Remedies Requirement

[26] When determining whether a statute has abrogated the common law, Indiana courts "presume[] that the legislature does not intend to make any change in the common law beyond what a statute declares either in express terms or by unmistakable implication." *Ladra v. State*, 177 N.E.3d 412, 423 (Ind. 2021) (quoting *Quakenbush v. Lackey*, 622 N.E.2d 1284, 1290 (Ind. 1993)). However, "[a]n abrogation of the common law will be implied (1) where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law, or (2) where the two laws are so

repugnant that both in reason may not stand." *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 25 (Ind. Ct. App. 1999) (quoting *Irvine v. Rare Feline Breeding Ctr., Inc.*, 685 N.E.2d 120, 123 (Ind. Ct. App. 1997)).

[27] The AOPA's legislative structure demonstrates the first indicator of common law abrogation: a comprehensive statutory scheme that "undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law." *Id.* The AOPA establishes detailed procedures for administrative review, specifies who may seek such review under Indiana Code § 4-21.5-5-2(b), sets time limits in Indiana Code § 4-21.5-5-5, mandates exhaustion of administrative remedies in the Exhaustion Statute (Indiana Code § 4-21.5-5-4(a)), and creates a narrow exception for judicial review of nonfinal agency action by the Statutory Exhaustion Exception (Indiana Code § 4-21.5-5-2(c)). This comprehensive framework provides unmistakable implication of legislative intent to replace the common law's more flexible approach to exhaustion exceptions with the structured statutory scheme of the AOPA. This interpretation is consistent with our Supreme Court's recognition of "the importance of enforcing [the] AOPA's exhaustion requirement strictly." *In re R.L.*, 246 N.E.3d at 261.

[28] As to the second indicator, retaining the common law exceptions to the exhaustion rule would run awry of the AOPA's language mandating that it is "the exclusive means for judicial review of an agency action." Ind. Code § 4-21.5-5-1(a). The common law exceptions upon which Shockley relies expand judicial review beyond that authorized by the Statutory Exhaustion Exception

or any other AOPA provision. *See* Ind. Code § 4-21.5-5-2(c) (allowing judicial review of a nonfinal agency action "only" when the petitioner will suffer "[i]mmediate and irreparable harm" and "[n]o adequate remedy exists at law"). Thus, the common law exceptions not incorporated by the Statutory Exhaustion Exception are repugnant to the AOPA's language.

[29]     Moreover, the legislature's express inclusion in the AOPA of a limited exception to the Exhaustion Statute implies its intent to exclude the pre-existing common law exceptions. Under the principle of *expressio unius est exclusio alterius*, "[w]hen certain items or words are specified or enumerated in a statute then, by implication, other items or words not so specified or enumerated are excluded." *State v. Willits*, 773 N.E.2d 808, 813 (Ind. 2002) (quoting *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 800 (Ind. 2001)).

[30]     In the AOPA, the legislature specifically enumerated only one set of circumstances under which judicial review of nonfinal agency action may proceed: that is, when a nonfinal agency action creates "[i]mmediate and irreparable harm" *and* "[n]o adequate remedy exists at law." Ind. Code § 4-21.5-5-2(c). This Statutory Exhaustion Exception demonstrates legislative awareness of situations when strict application of the exhaustion requirement might work injustice while still maintaining the limited availability of judicial review prior to final agency action. *See generally In re R.L.*, 246 N.E.3d at 260-61. The legislature's choice to include in the AOPA only this specific exception—rather than incorporating the broader common law exceptions previously recognized both before and during the AAA's tenure—indicates an

intent to limit exhaustion rule exceptions to that expressly provided by the Statutory Exhaustion Exception.

[31] Policy considerations also support our conclusion that the legislature abrogated the broader common law exceptions to the exhaustion rule. As Indiana courts have recognized, exhaustion requirements "protect[] administrative agency authority and promote[] judicial efficiency." *Adkins*, 625 N.E.2d at 1303. Allowing common law exceptions, rather than honoring only the Statutory Exhaustion Exception, would undermine these objectives by encouraging premature judicial intervention in administrative processes.

[32] Moreover, the specific exception provided by the Statutory Exhaustion Exception adequately protects against genuine hardship while maintaining the integrity of the administrative process. When a petitioner faces "[i]mmediate and irreparable harm" and has "[n]o adequate remedy exist[ing] at law," judicial review of a nonfinal decision may proceed without full exhaustion. Ind. Code § 4-21.5-5-2(c). This standard provides appropriate protection for parties who might suffer genuine prejudice from delayed review while maintaining the general principle that administrative agencies should be allowed to complete their review processes before court involvement. The legislature's careful balance between protecting individual rights and preserving administrative efficiency demonstrates a considered judgment that broader common law exceptions are unnecessary and potentially counterproductive within the AOPA's comprehensive framework. *See New Trend,* 518 N.E.2d at 1108 (ruling that "we, the Courts, are without authority to 'put something into a statute that

the legislature apparently designedly omitted'") (quoting *Poyser v. Stangland*, 106 N.E.2d 390, 391 (Ind. 1952)).

[33] For these reasons, we conclude that by codifying the exhaustion requirement and creating a specific statutory exception with precisely defined parameters, the legislature demonstrated its intent to supersede the previous common law approach.

## II. Shockley Does Not Qualify for Judicial Review Under the Statutory Exhaustion Exception

[34] Shockley has not satisfied the requirements of the Statutory Exhaustion Exception. He failed to show either of the Statute's requirements: (1) immediate and irreparable harm; and (2) no adequate remedy at law. He therefore is not entitled to judicial review of the Board's nonfinal actions in refusing to disqualify Johnson and Ratterman or to exclude Magdziarz's testimony.

## A. There Is No Immediate and Irreparable Harm

[35] Shockley claims immediate and irreparable harm arising from what he views as an improperly constituted Board. As to Johnson and Ratterman's disqualifications, Shockley contends he will suffer immediate and irreparable harm if he must proceed to a hearing on the disciplinary charges where they are allowed to serve as arbiters. Shockley does not elaborate other than to claim that he had a right to a properly constituted Board. He cites no Indiana appellate decisions finding immediate and irreparable harm arising from a rejected request for disqualification.

His claim of harm—that the participation of allegedly biased Board members might lead to an adverse ruling—is entirely speculative and contingent on future events. He has not demonstrated any concrete, immediate harm affecting him but, instead, relies on a hypothetical chain of events: that the Board members he seeks to disqualify might be biased or disqualified by statute, that they may improperly influence other Board members, that the Board might ultimately rule against him as a result, and that such an adverse ruling might result in sanctions against his license. Such attenuated theories of harm are insufficient to bypass administrative exhaustion. *See Ind. Fam. & Soc. Servs. Admin. v. Legacy Healthcare, Inc.*, 756 N.E.2d 567, 571 (Ind. Ct. App. 2001) (finding exhaustion of administrative remedies was required for party claiming, among other things, harm from potential revocation of a Medicaid contract); *Adkins*, 625 N.E.2d at 1303 (holding that "[t]here is no judicial relief for threatened injury until the prescribed administrative remedy is exhausted[,]" and that "there is no judicial review of a threatened administrative action").

[37] Moreover, the harm that Shockley alleges is not irreparable. If the Board is improperly constituted and decides Shockley's disciplinary charges adversely to him, the error can be rectified through judicial review after the Board's final decision. And a stay of the final order by the Board, followed by judicial review, may prevent such a disciplinary decision from ever taking effect after it is entered. *See* Ind. Code § 4-21.5-3-31(b) (allowing a party to petition the Board "for a stay of effectiveness of a final order" and authorizing the Board to "stay

the final order in whole or in part"). In these ways, the potential harm that Shockley cites could be effectively bypassed.

[38] To the extent that Shockley's claim of irreparable harm includes economic harm resulting from possible sanctions of suspension or revocation of his appraiser's license, it is no more persuasive. "[M]ere economic injury is insufficient to establish irreparable harm" and "[t]hreatened business failure is not the sort of irreparable injury against which equity protects." *Legacy Healthcare*, 756 N.E.2d at 571. The mere time, expense, and inconvenience of completing administrative proceedings—even when a party believes an adverse outcome to be a foregone conclusion—do not constitute irreparable harm justifying immediate judicial intervention. *See Johnson v. Celebration Fireworks, Inc.*, 829 N.E.2d 979, 982-83 (Ind. 2005) (acknowledging that agency might rule against the appellant but still requiring that the appellant exhaust administrative remedies before raising statutory interpretation issue in a court). This principle is especially relevant here, where Shockley seeks to short-circuit the administrative process based solely on preliminary evidentiary and procedural rulings.

[39] As to the Board's refusal to exclude Magdziarz's testimony, Shockley argues that he will suffer immediate and irreparable harm because the Board's ruling violates Indiana law. This alleged violation is based on Shockley's belief that Magdziarz must carry an Indiana appraiser's license to be able to review Shockley's appraisals. *See* Ind. Code § 25-34.1-11-12(b) (requiring a person who performs an "appraisal review" to hold a license or certificate under Indiana

Code § 25-34.1-3-8 or a license as a real estate broker); Ind. Code § 25-34.1-8-12 (specifying that a person who performs the work of a licensed appraiser without the required license or certification commits a Class B infraction).

[40] But the Board made clear that its pre-hearing refusal to exclude Magdziarz's testimony was preliminary. The Order specified:

> To the extent that any testimony exceeds the witness's knowledge or skillset, the Board will consider what appropriate weight, if any, should be given to the evidence at the final hearing. [Shockley] shall be given every opportunity to cross-examine any of [the State's] witnesses and attack the credibility or quality of testimony given.

App. Vol. II, p. 13.

[41] As the Board would hear and rule anew on Shockley's objections to Magdziarz's testimony at the hearing, Shockley may yet obtain exclusion or limitation of Magdziarz's testimony. Moreover, the Order goes on to suggest that it anticipates that Magdziarz's testimony will "primarily speak to USPAP standards, which are federally issued standards and not based on state specific laws." *Id.* Thus, whether Magdziarz will testify at the final hearing to the contents of Shockley's appraisals—the testimony that Shockley sought to exclude—is not even clear.

[42] Shockley has failed to establish immediate and irreparable harm from either the Board's preliminary denial of his motion to exclude Magdziarz's testimony or its refusal to disqualify Johnson and Ratterman.

## B.    There Exists an Adequate Remedy at Law

[43]    Shockley also has not established the Statutory Exhaustion Exception's requirement of an inadequate remedy at law. He seems to assume that his remedy—judicial review after final agency action—will be inadequate if the Board violated its ministerial duties by failing to disqualify Johnson and Ratterman and to exclude Magdziarz's testimony.

[44]    Even if the Board's rejection of Shockley's disqualification and exclusion requests were improper, Shockley can raise these same procedural objections in a petition for judicial review following the Board's final order. Indiana courts routinely review claims of administrative bias and procedural errors when reviewing final agency actions.[4] *See, e.g.*, *U.S. Outdoor Advert. Co. v. Ind. Dep't of Transp.*, 714 N.E.2d 1244, 1262 (Ind. Ct. App. 1999) (addressing claim of administrative law judge bias raised in petition for judicial review of final agency action). This established path for review ensures that procedural objections are neither lost nor waived but, rather, preserved for later judicial consideration within the proper statutory framework. As previously noted, Shockley could even seek a stay to prevent enforcement of any allegedly erroneous decision until it can be corrected through judicial review. *See* Ind. Code § 4-21.5-3-31(b).

---

[4] Although the parties offer significant argument as to the merits of the underlying disqualification and exclusion issues, we do not address or decide those issues. They are reserved first for the Board and then, if judicial review is sought, for the reviewing court within the constraints of the AOPA.

[45] Shockley also has remedies available to him within the administrative process itself. He retains the ability to present evidence and arguments regarding potential bias at the final hearing to persuade the Board to disqualify Ratterman and Johnson and/or exclude Magdziarz's testimony.

[46] The availability of complete relief through timely judicial review illustrates why immediate review that disrupts the administrative process is unnecessary. If a reviewing court ultimately determines that a Board member should have been disqualified or that the expert witness was improperly allowed to testify, it can vacate the Board's decision and remand for new proceedings without the disqualified member or contested evidence. *See Turner,* 740 N.E.2d at 862 (recognizing that even constitutional claims can await judicial review of final agency action where adequate remedies exist).

## Conclusion

[47] The Statutory Exhaustion Exception provides the only exception to the exhaustion rule under the AOPA. Given the invalidity of Shockley's claimed common law exceptions and his failure to meet the requirements of the Statutory Exhaustion Exception, the trial court properly dismissed Shockley's premature petition for judicial review.

[48] Once the Board takes final agency action in the disciplinary proceeding, Shockley will have the opportunity to seek timely judicial review of that order, including review of his claims regarding board member disqualification and

witness qualification if properly preserved. Until then, the administrative process must be allowed to run its course.[5]

[49] We affirm the trial court's judgment.

May, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Thomas R. Malapit, Jr.
J. Eric Rochford
Taylor C. Byrley
Malapit & Rochford
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

John R. Oosterhoff
Deputy Attorney General
Indianapolis, Indiana

---

[5] In light of this disposition, we need not address the State's claim under Indiana Code § 4-21.5-3-9 that Shockley was not entitled to judicial review because he failed to petition the director of the Office of Administrative Law Proceedings (OALP) within 10 days after the Board's decision.