



FILED

Dec 03 2024, 1:11 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-XP-185

## In the Matter of Petition for Expungement of R.L.; Indiana Law Enforcement Training Board,
*Appellant,*

–v–

## R.L.,
*Appellee.*

---

Argued: September 5, 2024 | Decided: December 3, 2024

Appeal from the Martin Circuit Court
No. 51C01-2207-XP-140
The Honorable Lynne Elise Ellis, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-XP-144

---

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa, Goff, and Molter concur.

**Slaughter, Justice.**

R.L., a sheriff's deputy, was charged with driving while intoxicated. The State later dropped criminal charges. But the Indiana Law Enforcement Training Board, which credentials Indiana's law-enforcement officers, brought proceedings to revoke R.L.'s basic-training certificate, without which R.L. cannot work as an officer. Board decisions are reviewable only under AOPA, the Administrative Orders and Procedures Act. Yet before the board issued a final decision, R.L. went to court and obtained a declaration that the board could not discipline him and an injunction barring the board from revoking his basic-training certificate.

We hold that the trial court erred in granting R.L.'s request for declaratory and injunctive relief. The only route by which R.L. can challenge the board's decisions is through AOPA's judicial-review framework. But R.L. is not entitled to this review. He did not exhaust administrative remedies but sued in court before the board's proceedings concluded. His failure to exhaust leaves us, a reviewing court, with no final agency action to review. We reverse the trial court's judgment and remand with instructions to dismiss R.L.'s declaratory-judgment action.

I

A

In the summer of 2021, R.L. and his wife, J.L., attended a party together. R.L. drank at the party and became angry with J.L. After the two went home, J.L. called friends and told them R.L. was drunk and belligerent. She said R.L. had put her in handcuffs and threatened to arrest her. Her friends called the Martin County Sheriff's Department, where R.L. worked as a deputy sheriff, to report a domestic-violence incident. Before responding to the call, five officers from the department—the elected sheriff, the chief deputy, a reserve deputy commander, and two regular deputies—met at a nearby intersection "to discuss the situation". Unbeknownst to them, J.L. had left home and was in her car. When she saw the sheriffs at the intersection, she pulled over to speak to them.

While J.L. was talking to the sheriffs R.L. arrived at the same intersection, driving his assigned sheriff's vehicle. R.L. got out of his car at the

sheriff's request. One deputy smelled alcohol on R.L.'s breath and asked him if he would take a preliminary breath test. R.L. agreed. This test showed R.L.'s blood-alcohol concentration was nearly twice Indiana's legal limit. R.L. also agreed to take a chemical blood-alcohol test. The sheriffs took R.L. to the station and administered the chemical test. This test also showed R.L.'s blood-alcohol concentration exceeded the legal limit. Sheriffs arrested R.L., and the State charged him with misdemeanor driving while intoxicated. The record does not reveal why the State later dismissed the charge.

Before R.L. could expunge his arrest record, he got a letter from the law enforcement training board. The board oversees the training and licensing of Indiana's law-enforcement officers and, in some cases, it can revoke an officer's law-enforcement authority. Ind. Code § 5-2-1-12.5(a). The board may, for example, revoke an officer's authority if he commits certain "conduct that would be a criminal offense . . . even if the officer was not charged with the criminal offense." *Id.* § 5-2-1-12.5(a)(4) The board's letter told R.L. it "learned of an event that may lead to the revocation of your Indiana Law Enforcement Basic Training Certification and authority to act as a law enforcement officer", and "voted to send notice of written charges for revocation of your certificate." The board alleged R.L. "engaged in conduct that meets the elements of Criminal Confinement, . . . a Level 6 Felony, and Operating a Vehicle with an ACE [alcohol concentration equivalent] of 0.08 or more, . . . a Class C Misdemeanor." The board said R.L. could request an evidentiary hearing to contest the charges or voluntarily relinquish his certificate.

B

Before responding to the board's letter, R.L. petitioned the trial court to expunge his arrest record. The court granted his request. It ordered that no "records for this arrest" be "placed or retained in any state central repository for criminal history information or in any other alphabetically arranged criminal history information system maintained by a local, regional or statewide law enforcement agency" and that his arrest record be "excluded from public access".

Armed with the court's order, R.L. demanded that the board drop its charges. He claimed that the expungement statute's anti-discrimination provision—which bars "refus[ing] to grant or renew a license, permit, or certificate necessary to engage in any activity, occupation, or profession" based on an expunged arrest record, I.C. § 35-38-9-10(b)(5)—prevented the board from disciplining R.L. The board disagreed, explaining that its allegations against R.L. "do not stem from the arrest or filing of the charges" but from R.L.'s "conduct" the night he was arrested. Because the board can discipline R.L. for "conduct that would be a criminal offense", the board argued, it could still discipline R.L. if it concluded he "engaged in conduct that would be a criminal offense" under section 5-2-1-12.5(a)(4).

Undaunted, R.L. petitioned the trial court for further relief. Without naming or serving the board, R.L. sought a declaration and an injunction against the board, which the court granted. Although R.L. did not serve the board, the court nonetheless issued a judgment declaring the board's proceedings unlawful and enjoining the board "from using facts from [R.L.'s] expunged arrest as a basis to revoke or deny to him his license to act as a law enforcement officer."

When the board learned of the adverse order, it intervened and moved the trial court to correct its error and vacate its order. The board argued that the court's order was improper on several grounds: the board was never served; R.L. did not exhaust administrative remedies; and the merits did not support the relief awarded. After a hearing, the trial court vacated its first order but issued a second order, again barring the board "from using any and all facts from [R.L.'s] expunged arrest case as a basis to revoke or deny to him his license to act as a law enforcement officer."

The board appealed. It argued that R.L.'s claim was not justiciable because (1) the trial court cannot interfere in an executive agency's ongoing investigation under separation of powers, (2) R.L.'s case was not ripe, and (3) R.L. failed to exhaust administrative remedies. Threshold issues aside, the board argued alternatively that the trial court erred on the merits.

The court of appeals reversed. *In re R.L.*, 228 N.E.3d 494, 495, 497 (Ind. Ct. App. 2024). In a precedential opinion, the unanimous panel did not address separation of powers, ripeness, or exhaustion. It sided with the

board on the merits, holding the board "must not consider the expunged arrest records in its proceedings", but "may consider independent evidence of the facts underlying those arrest records." *Id.* at 497.

R.L. then sought transfer, which we granted, 235 N.E.3d 135 (Ind. 2024), thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

## II

AOPA governs how to obtain relief in court from decisions of certain agencies. One of those agencies is the law enforcement training board. I.C. § 5-2-1-12.5(k). AOPA's procedure is the "exclusive means for judicial review of" board rulings. *Id.* § 4-21.5-5-1. Put differently, a party aggrieved by the board's final order must follow AOPA's procedures to challenge the order in court.

We hold that R.L.'s declaratory-judgment action in the trial court was premature because he did not exhaust available remedies before the board. Contrary to R.L.'s arguments, neither the declaratory-judgment act nor the expungement statute gives him another route to sue in court; he must follow AOPA's path. We reverse the trial court's judgment and remand with instructions to dismiss R.L.'s action. Because we reverse on these grounds, we do not address the board's other asserted grounds for reversal.

## A

AOPA permits a party aggrieved by "a final agency action" to seek judicial review of the action. *Id.* § 4-21.5-5-2(b). An agency action is not final, and thus is not ripe for review, until the petitioner exhausts his administrative remedies. *Id.* § 4-21.5-1-6; *id.* § 4-21.5-5-2(b); *Ind. Ass'n of Beverage Retailers, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 836 N.E.2d 255, 257 (Ind. 2005). Failure to exhaust waives the petitioner's right to judicial review at all. I.C. § 4-21.5-5-4(b). There are narrow circumstances under AOPA that excuse the exhaustion of administrative remedies and thus permit judicial review of a nonfinal agency action. *Id.* § 4-21.5-5-2(c). But those circumstances are not at issue here. R.L. argued neither that he will suffer "[i]mmediate and irreparable harm" by having to exhaust remedies nor

that "[n]o adequate remedy exists at law". *Ibid*. Thus, AOPA required R.L. to exhaust administrative remedies before the board.

We have long recognized the importance of enforcing AOPA's exhaustion requirement strictly. "Premature litigation may be avoided, an adequate record for judicial review may be compiled and agencies retain the opportunity and autonomy to correct their own errors." *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010) (quoting *Turner v. City of Evansville*, 740 N.E.2d 860, 862 (Ind. 2001)) (internal quotation marks omitted). Requiring that parties complete agency proceedings before seeking judicial review also avoids "collateral, dilatory action[s]", ensures "the efficient, uninterrupted progression of administrative proceedings", and fosters "the effective application of judicial review." *Advantage Home Health Care, Inc. v. Ind. State Dep't of Health*, 829 N.E.2d 499, 503 (Ind. 2005) (quoting *Austin Lakes Joint Venture v. Avon Util., Inc.,* 648 N.E.2d 641, 644 (Ind. 1995)) (internal quotation marks omitted). The exhaustion requirement also gives "the parties and the courts the benefit of [the agency's] experience and expertise". *Ibid.* (internal quotation marks omitted) (brackets in original).

The board's proceedings against R.L. began after it learned of his alleged misconduct. Once the board gets a misconduct report, the board's executive director investigates the misconduct. I.C. § 5-2-1-12.5(g). After the investigation, the director makes a disciplinary recommendation to the board. *Id.* 5-2-1-12.5(i). "If the recommendation is to revoke or suspend the law enforcement officer's authority", the director must serve written charges on the officer. *Id.* § 5-2-1-12.5(i)(1). Once the officer receives notice of any charges, he may relinquish his basic-training certificate or "demand an evidentiary hearing on the allegations." *Id.* § 5-2-1-12.5(i)(2). R.L. demanded a board hearing, but then sued in court to halt agency proceedings before the board could decide whether to revoke his certificate.

By going to court, R.L. circumvented board proceedings and ignored remedies available in that tribunal. An evidentiary hearing before the board is a trial-like procedure during which the officer has the right to counsel. *Id.* § 5-2-1-12.5(i)(3)(A). A subset of the board, selected by the board's chair, conducts proceedings and holds a hearing. *Id.* § 5-2-1-

12.5(i)(4). Before the hearing, the officer may engage in "reasonable discovery", *id.* § 5-2-1-12.5(i)(6), which the hearing panel addresses during a pre-hearing conference, along with briefing schedules and "any other pertinent issues", *id.* § 5-2-1-12.5(i)(5)(H). At the hearing, the parties can make opening statements, conduct "direct and cross-examination of witnesses", introduce evidence, and give "closing arguments." *Id.* § 5-2-1-12.5(i)(7). After the hearing, the hearing panel issues findings of fact and conclusions of law. *Id.* § 5-2-1-12.5(i)(4). The full board then reviews the panel's findings and conclusions, announces a "final decision", and "impose[s] the revocation or suspension, if warranted." *Ibid.* If the board revokes or suspends an officer's basic-training certificate, the officer may apply to the board for reinstatement, *id.* § 5-2-1-12.5(n) (providing for reinstatement where "the applicant poses no danger to the public" and "can perform as a law enforcement officer according to the board's standards"), or petition for judicial review, *id.* § 5-2-1-12.5(k) (stating an officer "may seek judicial review of an adverse determination of the board under" AOPA).

We hold that skirting board proceedings—as R.L. did here by running to court for relief before the board decided whether charges against him merit discipline—contravenes AOPA's exhaustion mandate. *Id.* § 4-21.5-5-2(b)(2); *id.* § 4-21.5-5-4(a). The hearing statute gives R.L. many opportunities to challenge any misconduct allegations. If the board decides not to discipline R.L., he keeps his basic-training certificate and need not seek relief in court. If the board instead revokes his certificate, R.L. may challenge the board's decision on judicial review. *Id.* § 5-2-1-12.5(k). Either way, AOPA does not permit R.L. to seek judicial review until the board's proceedings conclude and the board reaches a final decision. *Id.* § 4-21.5-5-2(b)(2); *id.* § 4-21.5-5-4(a). Of course, a board decision favorable to R.L. would obviate the need for judicial review.

R.L.'s litigation approach here underscores the importance of adhering strictly to AOPA's exhaustion requirement. By suing in court prematurely, R.L. both disrupted the board's proceedings and spawned needless litigation. The board never had the opportunity to vindicate him of any misconduct that would jeopardize his basic-training certificate. R.L. thus deprived the board of the chance to credit his substantive argument that the expungement statute's anti-discrimination provision barred the board

from disciplining him. And he prevented the board from reaching a decision and compiling a complete administrative record against which to adjudge the board's actions on judicial review.

In sum, R.L.'s failure to exhaust his remedies before the board leaves us without a final agency action to review. *Id.* § 4-21.5-1-6; *id.* § 4-21.5-5-2.

B

R.L. tries to justify his failure to comply with AOPA's exhaustion requirement by relying on two statutes, the expungement statute's anti-discrimination provision, *id.* § 35-38-9-10, and the declaratory-judgment act, *id.* ch. 34-14-1. R.L. makes the procedural argument that the anti-discrimination provision permits him to seek relief in court before the board concludes its proceedings. He also argues that the declaratory-judgment act authorizes his action outside AOPA's strictures. Both arguments fail.

The anti-discrimination provision generally bars "any person" from "refus[ing] to grant or renew a license, permit, or certificate necessary to engage in any activity, occupation, or profession . . . because of a conviction or arrest record expunged or sealed under this chapter." *Id.* § 35-38-9-10(b). This prohibition applies to a "governmental entity." *Id.* § 35-31.5-2-234(a); see *id.* § 35-31.5-1-1 (providing that "the definitions in this article apply throughout" title 35). A protected person under this provision may "file a written motion of contempt to bring an alleged violation of this section to the attention of a court." *Id.* § 35-38-9-10(f). And the provision says "the [protected] person is entitled to injunctive relief" against the alleged violator. *Ibid.*

The provision's injunctive-relief remedy, R.L. argues, means he may seek judicial relief independent of AOPA. This reading goes too far. The anti-discrimination provision "does not require any change or alteration in . . . [a] disciplinary record or proceeding as it relates to a licensing, certification, or public entity." *Id.* § 35-38-9-0.6(a)(3). By statute, the board credentials Indiana's law-enforcement officers. It may, among other things, "issue, authorize, or revoke the issuance of" any "diplomas", "certificates", and "badges" "to law enforcement officers". *Id.* § 5-2-1-12(3). The anti-discrimination provision, in other words, does not displace the other

statutory requirement that R.L. may seek judicial relief from the board's actions only through AOPA. *Id*. § 5-2-1-12.5(k).

As for the declaratory-judgment act, Indiana courts have long recognized that petitioners may not use the act to sidestep AOPA. "Where such an administrative remedy is readily available, filing a declaratory judgment action is not a suitable alternative." *Carter*, 925 N.E.2d at 360 (citing *Advantage Home Health Care, Inc.*, 829 N.E.2d at 503). Holding otherwise would gut the legislature's demand that petitioners exhaust agency remedies before going to court, and it would undermine the very litigation efficiency the exhaustion requirement seeks to advance.

Neither the expungement statute's anti-discrimination provision nor the declaratory-judgment act permits R.L. to bypass available remedies before the board.

\*       \*       \*

For these reasons, we reverse the trial court's judgment and remand with instructions to dismiss R.L.'s declaratory-judgment action.

Rush, C.J., and Massa, Goff, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT INDIANA LAW ENFORCEMENT TRAINING BOARD
Theodore E. Rokita
Attorney General of Indiana

Benjamin M. L. Jones
Evan Matthew Comer
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE R.L.
James H. Voyles, Jr.
Tyler D. Helmond
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana